(No. 62756.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. LORI UPTON, Appellee.

*Opinion filed September 17, 1986.—Modified on denial of rehearing December 1, 1986.*

Neil F. Hartigan, Attorney General, of Springfield, and John R. Clemons, State's Attorney, of Murphysboro (Roma J. Stewart, Solicitor General, and Mark L. Rotert and Jack Donatelli, Assistant Attorneys General, of Chi-

cago, and Kenneth R. Boyle, Stephen E. Norris and Vito A. Mastrangelo, of the State's Attorneys Appellate Service Commission, of Mt. Vernon, of counsel), for the People.

William G. Schwartz, of Hunter and Schwartz, of Carbondale, and Robert S. White, of Decatur, for appellee.

CHIEF JUSTICE CLARK delivered the opinion of the court:

This case presents a challenge to the validity of section 404 of the Illinois Controlled Substances Act (Ill. Rev. Stat., 1982 Supp., ch. 56½, par. 1404). The penalty provision of section 404, section 404(b), fixes a maximum fine for distribution of a "look-alike," or fraudulent, controlled substance, higher than the maximum fine provided for the distribution of certain *bona fide* controlled substances. It is claimed that this disparity in maximum fines offends the due process clause of the Illinois Constitution (Ill. Const. 1970, art. I, sec. 2).

This case also involves a broader question, stemming from the history of section 404 and its predecessors. Section 404 states:

"(a) For the purposes of this Section:

(1) 'Advertise' means the attempt, by publication, dissemination, solicitation or circulation, to induce directly or indirectly any person to acquire, or enter into an obligation to acquire, any substance within the scope of this Section.

(2) 'Distribute' has the meaning ascribed to it in subsection(s) of Section 102 of this Act but as relates to look-alike substances.

(3) 'Manufacture' means the producing, preparing, compounding, processing, encapsulating, packaging, repackaging, labeling or relabeling of a look-alike substance.

(b) It is unlawful for any person knowingly to manu-

facture, distribute, advertise, or possess with intent to manufacture or distribute a look-alike substance. Any person who violates this subsection (b) shall be guilty of a Class 3 felony, the fine for which shall not exceed $20,000.

(c) It is unlawful for any person knowingly to possess a look-alike substance. Any person who violates this subsection (c) is guilty of a petty offense. Any person convicted of a subsequent offense under this subsection (c) shall be guilty of a Class C misdemeanor.

(d) In any prosecution brought under this Section, it is not a defense to a violation of this Section that the defendant believed the look-alike substance actually to be a controlled substance.

(e) Nothing in this Section applies to:

(1) The manufacture, processing, packaging, distribution or sale of noncontrolled substances to licensed medical practitioners for use as placebos in professional practice or research.

(2) Persons acting in the course and legitimate scope of their employment as law enforcement officers.

(3) The retention of production samples of noncontrolled substances produced prior to the effective date of this amendatory Act of 1982, where such samples are required by federal law." (Ill. Rev. Stat., 1982 Supp., ch. 56½, par. 1404, as amended by Pub. Act 82—968, eff. Sept. 7, 1982.)

Section 404 is virtually identical to a similar provision previously held violative of due process in *People v. Wagner* (1982), 89 Ill. 2d 308, 311. The crucial difference between section 404 and the provision held unconstitutional in *Wagner* is that, in conjunction with the passage of section 404, the legislature promulgated a preamble which: (1) indicates that the legislature intends the disparity in penalties, and (2) attempts to justify and explain the disparity. This case therefore poses the question of whether certain legislation previously held unconstitutional may be upheld if, when reenacted, it is

accompanied by a preamble which expresses a new and different legislative intent.

On June 16, 1983, an information was filed in the circuit court of Jackson County charging defendant Lori E. Upton with three counts of distribution of a look-alike substance, in violation of section 404 of the Illinois Controlled Substances Act (Ill. Rev. Stat., 1982 Supp., ch. 56½, par. 1404). Before trial defendant moved to dismiss the information on the ground that the higher potential fine found in section 404(b) violates the due process clause of the Illinois Constitution (Ill. Const. 1970, art. I, sec. 2). The trial court denied the motion.

At trial, agents of the Southern Illinois Enforcement Group and others testified that the defendant, on three occasions in November and December 1982, sold them tablets resembling tablets which usually contain either methaqualone (a Schedule I controlled substance) or amphetamine (a Schedule II controlled substance). Defendant testified, admitting the sales but denying that she had represented the tablets to contain controlled substances. While the record does not reveal the actual composition of these tablets, they did not contain any controlled substances.

A jury found defendant guilty on all counts. On September 21, 1984, she was sentenced to serve one year of conditional discharge, fined $300, or $100 per count, and ordered to pay $39 restitution, an amount equal to the total price of the tablets. The appellate court, relying on *People v. Wagner* (1982), 89 Ill. 2d 308, reversed her conviction. (136 Ill. App. 3d 1075, 1077.) We granted the People's petition for leave to appeal (103 Ill. 2d R. 315(a)).

The People first argue that since defendant has not received the maximum potential fine of $20,000, she has no standing to challenge section 404. This argument is without merit. Having risked the maximum penalty,

defendant is a member of the aggrieved class and therefore has standing. *People v. Wagner* (1982), 89 Ill. 2d 308, 311.

The People next argue that, *People v. Wagner* (1982), 89 Ill. 2d 308, notwithstanding, section 404's provision of a higher potential penalty does not violate due process. To understand the basis of the People's argument, it is necessary to review the history of section 404 and its predecessors in detail.

Section 404, the "look-alike" drug statute under challenge here (Ill. Rev. Stat., 1982 Supp., ch. 56½, par. 1404), is the descendant of an earlier statute (Ill. Rev. Stat. 1961, ch. 38, par. 22—40) which penalized the sale of a nonnarcotic substance represented to be a narcotic. This provision carried a penalty of a term of imprisonment from one year to 10 years; at that time the penalty for actual sale was a term of 10 years to life. This court held that this "misrepresentation" narcotics statute was a proper exercise of the police power, and therefore consistent with due process, because it was reasonably related to the legitimate purpose of discouraging illicit traffic in narcotics. *People v. Calcaterra* (1965), 33 Ill. 2d 541, 545.

However, in 1973 the legislature amended the statutes governing the penalties for all controlled substances in such a way as to penalize "misrepresentation" offenses more severely than certain other narcotic offenses. As a result of these amendments, the fraudulent sale of a controlled substance was made a Class 3 felony with a potential $15,000 fine (Ill. Rev. Stat. 1973, ch. 56½, par. 1404), a penalty equal to that provided for sale of a Schedule III controlled substance (Ill. Rev. Stat. 1973, ch. 56½, par. 1401(d)). At the same time, the penalties for sale of Schedule IV or V substances were less severe; each was punishable only as a Class 4 felony with a $10,000 or $5,000 potential fine, respectively. (Ill.

Rev. Stat. 1973, ch. 56½, pars. 1401(e), (f).) It was this disparity between the penalties for sale of controlled and noncontrolled substances which was at issue in *People v. Wagner* (1982), 89 Ill. 2d 308.

In *Wagner*, this court held that the harsher Class 3 felony term of imprisonment inflicted upon persons convicted of misrepresentation offenses violated the due process clause. The court reasoned:

"The legislature expressly 'acknowledge[d] the functional and consequential differences between the various types of controlled substances and provide[d] for correspondingly different degrees of control over each of the various types.' (Ill. Rev. Stat. 1977, ch. 56½, par. 1100(4).) In view of that language the legislature need not expressly recognize the functional and consequential differences between harmful controlled substances and harmless noncontrolled substances. That distinction is obvious.

Fraudulent deliveries of noncontrolled substances are 'punishable to discourage illicit traffic in narcotics.' (*People v. Calcaterra* (1965), 33 Ill. 2d 541, 545.) The plain purpose of the Illinois Controlled Substances Act is to deter the traffic in controlled substances by punishing the traffickers and/or profiteers more severely. (*People v. Bradley* (1980), 79 Ill. 2d 410, 418.) The defendant here was subject to a greater penalty for delivery of .4 grams of a harmless brown powder than a person who would have actually delivered any amount of a schedule IV or V controlled substance under sections 401(e) and (f). The defendant incurred the penal liability that attaches to a Class 3 felony while the latter offense constituted only a Class 4 felony. Just as delivery of a controlled substance represents a greater threat to the public under the Illinois Controlled Substances Act than the possession of a controlled substance, the delivery of a controlled substance represents a greater threat to the public than the delivery of a noncontrolled harmless substance. Here, as in *Bradley*, the less serious threat to the public carries a harsher punishment than the greater threat. We concur with the appellate court's dissent that it is not reasonable

to assume that a person selling large dosages of valium should be subjected to a less severe sentence than a person giving away a No-doz pill representing it to be an amphetamine. It is not logical to believe that the legislature intended to punish one who delivers a noncontrolled substance more severely than one who delivers a controlled substance.

Section 404 is not reasonably designed to remedy the evil which the legislature determined to be a greater threat to the public. As such, section 404 violates the due process clause of the Illinois Constitution (Ill. Const. 1970, art. I, sec. 2)." *People v. Wagner* (1982), 89 Ill. 2d 308, 312-13.

Just before our decision in *Wagner*, the legislature amended the relevant statutes. It increased the penalty for the sale of a Schedule IV or V controlled substance to a Class 3 felony, identical to the penalty for a misrepresentation offense. (Ill. Rev. Stat. 1981, ch. 56½, pars. 1401(f), (g), 1402(b), 1404.) However, a misrepresentation offense still carried a greater potential fine than did Schedule IV and V sale offenses.

In *People v. Manuel* (1983), 94 Ill. 2d 242, this court held that these 1981 amendments to sections 401 and 402 could not revive section 404; and that while the fine provisions of section 404 were not at issue in *Wagner*, the fine provisions could not be severed from the Class 3 felony classification held violative of due process. Therefore, section 404, in its entirety, was considered void *ab initio*. In the same decision, the court specifically reserved for future consideration the question of whether section 404's reenactment as part of a new statutory scheme would pass constitutional muster. *People v. Manuel* (1983), 94 Ill. 2d 242, 244.

The "new statutory scheme" referred to in *Manuel*, and under consideration here, comprises three important changes in the Controlled Substances Act. First, the legislature added a lengthy definition of "look-alike" sub-

stances. This definition broadens the category of proscribed substances to include substances which resemble controlled substances in appearance. (See Ill. Rev. Stat., 1982 Supp., ch. 56½, par. 1102(z).) The legislature also designated simple possession of a look-alike substance a petty offense. (Ill. Rev. Stat., 1982 Supp., ch. 56½, par. 1404(c).) Finally, the legislature enacted the penalty provision at issue here.

Section 404(b), as reenacted, retains and increases the disparity between the maximum potential fine for delivery of a look-alike substance and the maximum fine for delivery of Schedule III, IV, and V substances. These latter fines remain fixed at $15,000, $10,000 and $5,000, respectively. (Ill. Rev. Stat., 1982 Supp., ch. 56½, pars. 1401(e), (f), (g).) The fine for distribution of a look-alike substance was increased to $20,000. (Ill. Rev. Stat., 1982 Supp., ch. 56½, par. 1404(b).) (While defendant was charged under this statute, it is worth noting that the legislature, in the same session, again amended the Controlled Substances Act, this time increasing the maximum fine for delivery of a look-alike substance to $150,000. (Ill. Rev. Stat. 1983, ch. 56½, par. 1404(b).) The maximum fines for delivery of Schedule III, IV, and V controlled substances were also increased, but only to $125,000, $100,000, and $75,000, respectively. Ill. Rev. Stat. 1983, ch. 56½, pars. 1401(e), (f), (g).)

The legislature also included a preamble to Public Act 82—968 which purports to explain and justify the continued disparity. The preamble reads in pertinent part:

"WHEREAS, the General Assembly recognizes the special dangers and unique threat to the public health, safety and welfare posed by look-alike substances, including:

1) that their particular appeal to and widespread marketing among young people promotes acceptance of drug abuse;

2) that their misrepresentation as to ingredients and effects leads to unanticipated reactions and confusion as to the effects and dosage levels of actual controlled substances;

3) that the wide availability of constituent ingredients results in great ease of their manufacture and generates immense profits for manufacturers and distributors; and

4) that their actual ingredients, though varied, create additional serious health hazards when the manner of administration or ingestion parallels that usually associated with the substances being imitated; and

WHEREAS, The General Assembly therefore intends by this Act to penalize the manufacture, delivery, possession with intent to manufacture or distribute, advertising and possession of look-alike substances in a manner commensurate with their distinct harm, which is in fact greater than that of many actual controlled substances; therefore ***.'' 1982 Ill. Laws 2368, Preamble to Pub. Act 82—968, amending the Illinois Controlled Substances Act (Ill. Rev. Stat. 1981, ch. 56½, par. 1100 *et seq.*), eff. Sept. 7, 1982.

That the preamble was adopted in response to *Wagner* is evident in the legislative record. One of the co-sponsors of the bill in the House stated that the bill's preamble "expresses the legislative intent of the bill, to create a penalty provision distinct from that applicable to controlled substances based upon different types of harm stemming from the distribution of look-alike drugs." (82d Ill. Gen. Assem., House Debates, May 18, 1982, at 123-24.) It also was stated during the legislative debates that the penalty structure of the bill "will withstand the scrutiny of the courts, based upon the recognition of the special dangers connected with look-alike drugs, and this was done in light of the recent *People v. Wagner* case." (82d Ill. Gen. Assem., House Debates, May 20, 1982, at 156.) The other co-sponsor of the house bill added that "[t]his Bill will go a long way, I think, to

cure *** the problems created by *People v. Wagner* which held unconstitutional the Section dealing with substances that are represented to be counterfeit ***. This is a very good bill which I think the legislative intent in the preamble makes clear the legislature is finding as a special problem. To guide the Supreme Court when they construe this, I will refer them directly to that." 82d Ill. Gen. Assem., House Debates, May 20, 1982, at 162-63.

The sponsors of the legislation also referred in debate more specifically to some of the "special dangers" thought to stem from look-alike drugs. For example, one of the co-sponsors referred to the greater profits accruing to the sellers of look-alike substances because of the inexpensiveness and greater availability of their ingredients. (82d Ill. Gen. Assem., House Debates, May 20, 1982, at 158.) In the Senate, one legislator apparently made the same point, stating that the penalty structure is designed in such a way as to "remove the economic incentive." (82d Ill. Gen. Assem., Senate Debates, June 24, 1982, at 52.) The legislators also referred to the problems, mentioned in the preamble, of look-alikes which contain harmful foreign substances and/or which lead users to miscalculate the dosages of actual drugs. "We currently have seven confirmed deaths from overdose of look-alike drugs; and, of course, there have been many other problems of individuals who have overdosed on medication, as a result of the look-alike drug problem." 82d Ill. Gen. Assem., House Debates, May 20, 1982, at 157.

While this court has not previously reviewed the penalty provision of the look-alike statute it has held that the substantive measure criminalizing look-alike sales is a proper exercise of the police power, and that the definition of look-alike substances is not unconstitutionally vague or overbroad. (*People v. Matkovick* (1984), 101 Ill. 2d 268, 274.) This case involves a challenge only to the

penalty provisions of the statute.

The principles governing our review of penalty provisions under due process have been stated a number of times. On the one hand, penalty provisions have long been thought to bear a kind of presumption of constitutionality. The legislature, under the State's police power, has wide discretion to prescribe penalties for defined offenses. (*People v. Taylor* (1984), 102 Ill. 2d 201, 205; *People v. Bradley* (1980), 79 Ill. 2d 410, 417; *People v. Dixon* (1948), 400 Ill. 449, 453.) On the other hand, even the legislature's power to fix penalties is subject to the constitutional proscription which prohibits the deprivation of liberty without due process of law. (*People v. Bradley* (1980), 79 Ill. 2d 410, 417.) Legislation will survive a substantive due process challenge so long as it is reasonably designed to remedy the evils the legislature has determined to be a threat to the public health, safety, and general welfare. *Heimgaertner v. Benjamin Electric Manufacturing Co.* (1955), 6 Ill. 2d 152, 159.

A summary of our holdings in the due-process, criminal-penalty cases makes clear that penalty provisions enjoy no immunity from due process. The legislature may not penalize possession of cannabis as harshly as it penalizes possession of genuine narcotics like morphine and heroin. (*People v. McCabe* (1971), 49 Ill. 2d 338, 349-50.) It may not penalize the possession of Schedule IV substances more severely than their delivery. (*People v. Bradley* (1980), 79 Ill. 2d 410, 417-18.) Finally, in *Wagner*, it was held that the legislature could not punish fraudulent sale of harmless noncontrolled substances more severely than the sale of actual, and harmful, controlled substances. *People v. Wagner* (1982), 89 Ill. 2d 308, 313.

*Wagner* and *Bradley* are distinguishable from the present case because, in each instance, the penalty provisions directly contradicted the *declared* legislative intent.

A measure inflicting more severe penalties on drug possessors than on drug traffickers was not "reasonably designed" to serve the declared goal of reducing drug traffic by punishing the traffickers more severely. Likewise, a measure punishing con men more severely than actual traffickers bore as little relation to that same declared goal.

In both cases, the absence of a declared legislative rationale for the aberrant penalties shifted the burden of persuasion from the challengers of the legislation to its supporters, and in neither case was the burden met. The presumption of constitutionality cannot survive where, as in *Bradley*, the legislation appears on its face to be the product of an "oversight." (*People v. Bradley* (1980), 79 Ill. 2d 410, 418; see also *United States Railroad Retirement Board v. Fritz* (1980), 449 U.S. 166, 187, 66 L. Ed. 2d 368, 384, 101 S. Ct. 453, 466 (Brennan, J., dissenting).) Here, however, the reenactment of the fine provisions with an explanatory preamble demonstrates that the current disparity is not an oversight.

The legislature, in the preamble, has explicitly asserted an intention to penalize the sale of look-alike substances more harshly than the sale of some controlled substances. It has asserted that, under some circumstances, look-alike substances are more harmful than controlled substances. Given these explicit statements, *Wagner* and *Bradley* are not dispositive of the instant case.

We think that the new statute is reasonably designed to achieve the greater goal of preventing drug traffic and abuse. While we reject some of the rationales for the harsher penalties, several others are just plausible enough to meet the standard of bearing a real or substantial relation to the larger objectives of the Illinois Controlled Substance Act.

We reject the rationale embodied in the first clause of

the preamble. The legislature asserts that look-alike drugs have a "particular appeal" to young people. However, look-alike drugs are defined as substances which resemble or are represented to be controlled substances. In other words, a person who sells caffeine tablets, which look like caffeine tablets, commits no offense under the Act. He only commits an offense if he sells them as, or if they resemble, an amphetamine or some other controlled substance. Therefore, by logical definition, look-alike drugs cannot possess any "particular appeal" to young people which controlled substances lack.

We can easily accept the legislature's conclusion that look-alike substances promote drug abuse. However, the legislature does not assert, nor can it, that the distribution of these substances is *more* likely to promote drug abuse than is the distribution of Schedule III, IV and V controlled substances.

Some of the other justifications for the harsher penalties levied upon distributors of look-alike drugs, however, are rationally related to the purposes of the Act. It is not inconceivable that look-alike drugs may cause overdoses, either because they contain impurities, or because they mislead users as to the potency and dosages of actual controlled substances. It is also plausible that dealers in look-alike drugs are able to reap greater profits from their sale, and therefore will only be deterred by fines set higher than those levied upon dealers in Schedule III, IV and V controlled substances. Since these asserted, and plausible, hypotheses support a substantial relationship between harsher penalties for sale of look-alike drugs and the greater goal of reducing actual drug abuse, section 404, as amended, does not violate due process.

Defendant's only argument in support of her contention that the legislation is unconstitutional is based on the legislature's latest set of amendments. As defendant

notes, Public Act 83—778 actually narrows the ratio of greatest possible disparity between the maximum potential fines from 4:1 ($20,000:$5,000) to 2:1 ($150,000:$75,000). The defendant argues that this change in ratio somehow vitiates the seriousness of the legislature's concern for the look-alike–substance problem.

It could be argued that, on the contrary, these changes indicate that the legislature is growing more concerned about the look-alike–drug problem. If we were to consider the change in the arithmetic difference between the two penalties rather than their ratio, we might well conclude that the legislature's concern over the look-alikes has enormously increased. That difference, after all, has risen from $15,000 ($20,000-$5,000) to $75,000 ($150,000-$75,000). In any case, we cannot agree that due process requires the legislature to maintain a precise ratio between the two different sets of penalties.

For all of the reasons stated above, the judgment of the appellate court is reversed, and the cause is remanded to the appellate court for consideration of the issues not addressed by that court's initial disposition of this case.

*Reversed and remanded.*