SECOND DIVISION

September 27, 2005

No. 1-04-2442

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. )

)

EDWIN ORTA, ) Honorable

) James R. Epstein,

Defendant-Appellant. ) Judge Presiding.

               

JUSTICE WOLFSON delivered the opinion of the court:

A person charged with a crime has the right to expect his lawyer’s questions to prosecution witnesses will not help the State prove its accusation.  In this case, the defendant’s lawyer elicited testimony from police officers that enabled the State to prove an essential element of its charge.  For that reason, we reverse the defendant’s conviction for possession of a controlled substance with intent to deliver and remand this cause for a new trial.

Following a bench trial, the defendant, Edwin Orta, was convicted of possession of a controlled substance with intent to deliver and sentenced to 10 years’ imprisonment.

Defendant contends: (1) he was denied the effective assistance of counsel where defense counsel elicited inculpatory evidence on cross-examination; (2) he was denied his right to confrontation where stipulated evidence was introduced absent an explicit waiver; (3) he is entitled to a credit of $1,135.00 against his mandatory drug assessment for the time he spent in custody; and (4) the compulsory extraction of his blood and perpetual storage of his DNA violate his fourth amendment right to be free from unreasonable searches and seizures.

FACTS

At trial, Chicago police officer Scott Wolf testified that he and his partner were conducting a narcotics surveillance and executing a search warrant on November 8, 2003.  They were sitting in an unmarked police car outside a building at 2146 N. Milwaukee Avenue in Chicago.  The building had commercial stores on the first floor with two doors in between the stores.  He saw defendant exit from the first-floor door which led to an apartment on the second floor of 2146 N. Milwaukee Avenue.  Defendant got into a car and drove away.  The officers followed the defendant and stopped him a couple of blocks away.  Wolf asked defendant to produce a driver’s license.  He informed the defendant he had a search warrant for the apartment at 2146 N. Milwaukee Avenue.  He showed him a copy of the search warrant.  Defendant said, "Go ahead and search.  I do not have anything in the house."  Wolf recovered a set of house keys from the keys in the ignition of the car.  

Wolf observed officer Marvin Bonnstetter try the keys on the ground-level entry door he had seen defendant exiting.  The keys opened the locked door.  Defendant was brought back to the scene but not brought upstairs.  Wolf inventoried the keys.  

On cross-examination, defense counsel asked Wolf about a "control transaction" that took place on November 7, 2003, at 2146 N. Milwaukee Avenue.  Defense counsel had referred to this evidence in his opening statement.  Wolf said he was present on November 7, 2003, but had no knowledge of any funds received by a "reliable informant" from the Chicago Police Department.  The State objected to the evidence on grounds of relevance, and the court overruled the State’s continuing objection.  Defense counsel continued to ask about the November 7 transaction.  Wolf said he had no knowledge of defendant’s possession of any commingled funds that were later used in the investigation.    

Defense counsel asked Wolf if he was aware that a black shaving bag was recovered in the apartment, and that various pieces of mail with defendant’s name on it were found in the bag.  Wolf said he was aware of those facts.  Wolf admitted the mail bore the address of 2142 N. Milwaukee Avenue.  In answer to a question by defense counsel, Wolf said a lot of male clothing was found in the apartment.  None of the clothing was inventoried or mentioned in a police report.    

Officer Bonnstetter testified he was given keys by another officer.  He used one of the keys to open the ground-floor door of the building at 2146 N. Milwaukee.  He walked upstairs to the second-floor apartment.  There was only one apartment unit on the second floor.  The door to the apartment was ajar.  Bonnstetter knocked on the door.  A woman answered the door.  When the officer entered the apartment, the woman and two children were inside.  He told them to stay in the front room and began searching the apartment.  He entered a bedroom and opened a dresser drawer.  In the drawer he found two boxes of baggies and a large black shaving bag.  In the bag were a small hand scale and an electric scale, $395, some mail, and 14 individually wrapped bags of what he believed to be crack cocaine.  The items were inventoried.  Bonnstetter said the documents in the bag were cell phone bills of Edwin Orta.  Defense counsel objected on the basis of "business records," and the court sustained the objection on hearsay grounds.  Bonnstetter tried the keys on the upper apartment door.  Another key fit that lock.  These were the keys found in the ignition of the car driven by Orta.  

On cross-examination, defense counsel questioned Bonnstetter about male clothing found in the apartment.  Bonnstetter said he saw men’s underwear in the dresser drawer where he found the black shaving bag.  He did not inventory the underwear.  Defense counsel asked why the arrest report indicated only $295, not $395, was recovered.  Bonnstetter explained that $295 belonged to the defendant, and $100 were prerecorded funds that belonged to the Chicago Police Department.  Defense counsel asked whether the $100 in prerecorded money was used in the controlled transaction on November 7, 2003.  Bonnstetter said it was.  The State’s objections to the evidence about the money were overruled.
 

The State attempted to introduce into evidence the cell phone bills addressed to the defendant.  The court did not allow the bills to be entered into evidence, but let stand the oral testimony about the defendant’s name and address on the bills.  

The State proceeded by way of stipulation.  The parties stipulated that if called to testify, Officer Marvin Bonstetter would testify he recovered 14 baggies which were kept in his safekeeping and control from the time of recovery until the time of inventory, that the items were inventoried in a sealed condition for delivery to the Illinois State police crime lab, that the items were in substantially the same condition, and there was a proper chain of custody maintained at all times.  The parties stipulated that if Kate Roscovius, a forensic chemist at the crime lab, were called to testify, she would testify she received the evidence in a sealed condition, she performed the tests commonly accepted in the area of forensic chemistry, found that the total estimated weight of the items was 29.7 grams, and the items tested positive for the presence of cocaine. 

The parties stipulated that if called to testify, Officer Ruiz would testify he recovered a total of 15 bags containing suspect cocaine from the residence at 2146 N. Milwaukee Avenue on November 8, 2003.  

In his closing argument, the assistant State’s Attorney argued constructive possession of the drugs was evidenced by defendant’s exiting the door at 2146 N. Milwaukee, his possession of the keys to the building and the apartment, and the recovery of the drugs in the apartment along with the pieces of mail in defendant’s name.  The evidence of defendant’s intent to deliver included the amount of the drugs, the individual packaging, and the baggies and scales found with the drugs.  

Defense counsel argued that no drugs were recovered from the vehicle the defendant was driving or from defendant’s person.  There was no evidence of who owned or leased the vehicle, or of who rented the apartment.  He argued the State had not proved that defendant controlled the premises where the drugs were found.  He argued the failure by officers to inventory any items of clothing damaged their credibility.  Credibility also was affected, he said, by the officers’ failure to turn over to the State the prerecorded funds from the previous day’s sale.  

The court found the defendant guilty of possession of a controlled substance with intent to deliver.  In the judge’s findings, the evidence he relied on included the defendant exiting the door that led to the apartment, his possession of keys to the apartment, the male clothing, and the pieces of mail with defendant’s name that were found in the bag with the drugs.  The judge said the significance of the mail was not to tie the defendant to the apartment but to the drugs and drug paraphernalia in the bag.  The judge found the evidence of intent to deliver included the packaging, the scales, and the money that was used by police in a controlled buy the previous day.  

The defendant’s motion for new trial was denied.  Following  the sentencing hearing, defendant was sentenced to 10 years in prison.  He was ordered to submit to a DNA sample pursuant to section 5-4-3 of the Unified Code of Corrections.  730 ILCS 5/5-4-3 (West 2002).  The court ordered defendant to pay fees and costs totaling $3,499, including a $3,000 assessment, pursuant to section 411.2(a)(1) of the Illinois Controlled Substances Act.  720 ILCS 570/411.2(a)(1) (West 2002).            

DECISION

I. Ineffective Assistance

The defendant contends he received ineffective assistance because his lawyer brought out damaging and inadmissible evidence the State did not offer.  The defendant says his trial counsel elicited, and the trial court relied on, evidence of cellular phone bills with his name on them, articles of male clothing, and pre-recorded funds from the drug sale of November 7.    

Where the effectiveness of a defendant’s trial counsel is questioned, the defendant must show that counsel’s representation fell below an objective standard of reasonableness.  
Strickland v. Washington
, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984).  There are two components to an ineffective assistance claim: (1) deficient performance and (2) prejudice.  
People v. Jackson
, 318 Ill. App. 3d 321, 326, 741 N.E.2d 1026 (2000), citing 
Lockhart v. Fretwell
, 506 U.S. 364, 369, 113 S. Ct. 838, 842, 122 L. Ed. 2d 180 (1993).  

In order to prove both prongs, a defendant must show his lawyer’s deficient representation created "a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different."  
People v. Albanese
, 104 Ill. 2d 504, 525, 473 N.E.2d 1246 (1984).  Specifically, the defendant must show that defense counsel’s deficiencies so prejudiced the defendant as to deprive him of a fair trial with a reliable result.  
People v. Caballero
, 126 Ill. 2d 248, 259-60, 533 N.E.2d 1089 (1989).  The defendant must overcome a "strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance," that is, that "the challenged action might be considered sound trial strategy."  
People v. Pecoraro
, 175 Ill. 2d 294, 319-20, 677 N.E.2d 875 (1997).  

To sustain a charge of possession of a controlled substance, the State must show the defendant had knowledge of the presence of an illicit substance which was in his immediate and exclusive control.  
People v. Brown
, 277 Ill. App. 3d 989, 997, 661 N.E.2d 533 (1996).  Possession may be actual or constructive.  Constructive possession requires a showing that the defendant had the intent and the capability to maintain control over the substance.  
Brown
, 277 Ill. App. 3d at 997.  Constructive possession must be accompanied by proof that the defendant had some control over the area where the drugs were found.  
Brown
, 277 Ill. App. 3d at 997, citing 
People v. Luckett
, 273 Ill. App. 3d 1023, 652 N.E.2d 1342 (1995).    

We believe the most damaging evidence elicited by defense counsel in this case was the prerecorded funds.  The trial court tried to discourage defense counsel from presenting evidence concerning the prior day sale of drugs to a police informant.  The trial court obviously recognized defense counsel was ill-serving his client by establishing Orta was in the business of selling drugs.  In fact, the State, by objecting, sought to block evidence of the prior sale.  Defense counsel was undeterred.  He persisted--during cross-examination of police officers and again during final argument.  

When the trial court questioned defense counsel’s reasons for offering evidence of the prior sale, the response had something to do with an attack on the police officers’ credibility.  We do not see how establishing Orta as a drug dealer had anything to do with police credibility.  We reject the State’s suggestion that this was a prudent but unsuccessful trial tactic.  The evidence prejudiced the defense case with no legitimate tactical purpose.    

As to the cellular phone bills, defense counsel first introduced the evidence through his cross-examination of Wolf.  During the State’s direct examination of Bonnstetter, after Wolf testified, the prosecutor attempted to introduce the bills to connect the defendant with the drugs and drug paraphernalia found in the bag.  The trial court did not allow the actual bills into evidence, but allowed the oral testimony regarding the contents of the bills to stand.  

The State suggests that the trial court’s hearsay ruling was erroneous because the evidence was not being offered for the truth of the matter asserted.  Only those statements offered to prove the truth of the matter contained therein are subject to the hearsay rule.  
People v. Buffman
, 260 Ill. App. 3d 505, 511, 636 N.E.2d 783 (1994). 
 There is support for the State’s position.  See 
People v. Stewart
, 105 Ill. 2d 22, 57-58, 473 N.E.2d 840 (1984) (laundry receipt with defendant’s name was not hearsay because it was not offered to prove the truth of its content, but to link defendant to the hotel room where the receipt was found); 
People v. Songer
, 229 Ill. App. 3d 901, 906, 594 N.E.2d 405 (1992) (prescription drug bottles, letter and car title found in a bag with contraband were admissible simply to indicate that the person whose name appeared on the items possessed the contraband; even if improperly admitted, the evidence was cumulative); 
People v. Cruz
, 111 Ill. App. 3d 95, 101, 443 N.E.2d 769 (1982) ("It could be argued that [the electric bill addressed to defendant] was not hearsay evidence if it were simply offered as circumstantial evidence that Cruz was receiving mail at that address"). 

We are reluctant to say counsel was ineffective when he failed to contend that evidence of the presence of Orta’s name on the cellular phone bills would be inadmissible hearsay.  In fact, the State contends it would have offered the bills through Bonnstetter whether or not defense counsel beat it to it.  At any rate, our decision does not turn on the trial court’s eventual use of the information on the bills to support its finding that constructive possession had been proved beyond a reasonable doubt.

Defendant also points to the evidence of the male clothing found in the drawer that contained the bag.  At trial, defense counsel argued the evidence was relevant to attack the officers’ credibility because no male clothing was recovered from the scene or mentioned in a police report.  Like the cellular bills, this evidence was much more damaging than helpful to the defense case.  The State did not elicit the evidence in its direct examination of either of the police officers.  It was another piece of evidence used by the trial court to find constructive possession.  The trial court, when finding Orta had constructive possession of the controlled substance, referred to the male clothing in the apartment bedroom "when there were no other males seen on the premises."  We see no valid or tactical reason why a competent attorney would have cross-examined a witness about this evidence.

The second prong of the 
Strickland
 analysis is whether defendant was prejudiced by counsel’s errors.  The State contends that absent the damaging evidence brought out by defense counsel, the evidence introduced by the State overwhelmingly proved defendant’s guilt beyond a reasonable doubt.  It is possible the court would have found constructive possession of the drugs based only on defendant’s exiting the door leading to the apartment and his possession of the door keys, in addition to the phone bills, but the evidence hardly was overwhelming.  

We have found no case where a conviction was based solely on the possession of keys to a residence where contraband is found.  The decisions hold more evidence is needed to show constructive possession.  See, 
e.g.
, 
People v. Spann
, 332 Ill. App. 3d 425, 437, 773 N.E.2d 59 (2002) (evidence of constructive possession included key and defendant’s statements that he paid rent and stayed in the apartment on occasion); 
People v. Macias
, 299 Ill. App. 3d 480, 486-88, 701 N.E.2d 212 (1998) (possession of key to apartment was not sufficient to sustain conviction where defendant testified the keys belonged to a third party; no other evidence was offered to show possession)
; 
People v. Chicos
, 205 Ill. App. 3d 928, 563 N.E.2d 893 (1990) (constructive possession found where defendant possessed a key to the apartment and confessed that she lived in the apartment and the contraband was hers).   

The State suggests evidence of defendant’s control over the premises is found in the complaint for the search warrant, the police report, and the pre-sentence investigation report, all of which list the defendant’s address.  Since none of this "evidence" was introduced, or even admissible, at trial, we do not consider it.  

The trial court did rely in part on the male clothing to find constructive possession.  But most damaging to the defendant was his counsel eliciting the evidence of the pre-recorded funds and his repeated references to that evidence in his opening statement and closing argument.  For example, in his opening statement, defense counsel began by saying, "Judge, actually, what you will hear the manner [
sic
] in which this case was developed that there was a control transaction between the officer and reliable informant that occurred on November 7th.  That reliable informant actually served as the predicate for a search warrant."  In defense counsel’s closing, he said, "[Bonnstetter] says $395 is the aggregate of $295 which is ostensibly money from my client and a $100 of commingled funds*** So I examined that to the issue of credibility, not to support facts of the intent to deliver."  

It appears this evidence played a role in the court’s finding of intent to deliver.  
The court said:

"These bags were individually packaged with cocaine in each of the bags.  There was drug paraphernalia, specifically two scales. [There was] *** money which was identified by the police as money used for controlled buy the day before*** And while he argues that the failure to turn over to the state and their failure therefore to have it turned over to the defense of records inventory of the police affects credibility.  One could take it that way as he argues it.  But, it could also be evidence that the person who was in position [
sic
] of these drugs with the baggies, with the individual packaging, with 29.7 grams, with two scales was not using it for personal use, but was indeed in the business of delivering the drugs."       

This evidence was damaging enough to defendant’s case to satisfy both prongs of the 
Strickland
 test.      

"For defense counsel to elicit testimony which proves a critical element of the State’s case where the State has not done so upsets the balance between defense and prosecution so that defendant’s trial is rendered unfair.  Prejudice is established because without the evidence elicited by defense counsel, the court could not have found defendant guilty."  
Jackson
, 318 Ill. App. 3d at 328.      

Defense counsel’s repeated and misguided efforts to elicit damaging testimony not introduced by the State, and the trial judge’s partial reliance on this evidence in his finding, resulted in an unfair trial for the defendant.  We
 reverse defendant’s conviction and remand for a new trial. 

II. Stipulated Evidence

Defendant contends he was denied his sixth amendment right of confrontation where his counsel entered into a stipulation regarding the identity, weight, and chemical composition of the recovered substances, and the record does not indicate that he knowingly and intelligently waived this right.  We address the issue because it could arise in a new trial

This issue is pending before the Illinois Supreme Court in 
People v. Phillips
, 352 Ill. App. 3d 867, 871, 817 N.E.2d 566 (2004), 
appeal allowed
, No. 99568 (February 24, 2005).  In 
Phillips
, the Third District held the record must affirmatively show that the defendant did not object to or dissent from his attorney’s decision to enter a stipulation.  
Phillips
, 352 Ill. App. 3d at 871.
  

A different panel of the Third District found the 
Phillips
 court’s holding was incorrect and misinterpreted the supreme court’s holding in 
People v. Campbell
, 208 Ill. 2d 203, 212-13, 220-21, 802 N.E.2d 1205 (2003).  
People v. Scott
, 355 Ill. App. 3d 741, 824 N.E.2d 302 (3d Dist. 2005).  Two panels of the First District agree with 
Scott
.  See 
People v. Foerster
, No. 1-04-0749 (Ill. App. Ct., 1st Dist., July 25, 2005), and 
People v. Banks
, No. 1-04-0801 (Ill. App. Ct., 1st Dist., July 20, 2005). 

In 
Campbell
, the court held that defense counsel may waive a defendant’s right of confrontation so long as the defendant does not object and the decision to stipulate is a matter of trial tactics and strategy.  
Campbell
, 208 Ill. 2d at 217.  The defendant is entitled to admonishment and must affirmatively agree to the stipulation only where the stipulation includes a statement that the evidence is sufficient to convict the defendant or where the State’s entire case is to be presented by stipulation.  
Campbell
, 208 Ill. 2d at 221.

In this case, there is nothing in the record showing the defendant objected to the stipulation regarding the identity, weight, and chemical composition of the recovered substances.  The stipulation was a matter of trial strategy because the weight and nature of the drugs were not at issue.  See 
Scott
, 355 Ill. App. 3d at 744-45.  The defense at trial was that defendant was not in actual or constructive possession of the drugs, so there was no reason to contest the lab results.  
In addition, the stipulation did not state that the evidence was sufficient to convict the defendant, nor did the State present its entire case through the stipulation.  We find, as in 
Scott
, 
Banks
, and 
Foerster
, that the requirements of 
Campbell
 have been satisfied and defendant was not denied his sixth amendment right of confrontation.        

III. Credit Against Assessment

The defendant was ordered to pay an assessment of $3,000, pursuant to section 411.2(a)(1) of the Illinois Controlled Substances Act.  720 ILCS 570/411.2(a)(1) (West 2002).  He contends he is entitled to a credit of $1,135.00 for the 227 days he spent in jail awaiting trial and sentence.  Section 110-14 of the Code of Criminal Procedure allows a credit of $5 per day for "[a]ny person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense."  725 ILCS 5/110-14(a) (West 2002).  

The State contends defendant is not entitled to the credit because he was levied an "assessment," not a "fine."  Section 411.2 refers only to an "assessment," and says the assessment is in addition to and not in lieu of "any fines, restitution costs, forfeitures or other assessments authorized or required by law."  720 ILCS 570/411.2(b) (West 2002).  

Given our decision reversing defendant’s conviction and remanding the cause for a new trial, we do not reach the issue of the assessment imposed on defendant.  

IV. DNA

Defendant contends the compulsory extraction and perpetual storage of his DNA violate his fourth amendment right to be free from unreasonable searches and seizures under the federal and state constitutions.  U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6.  Section 5-4-3 of the Unified Code of Corrections mandates DNA sampling from any person convicted or found guilty "of any offense classified as a felony under Illinois law."  730 ILCS 5/5-4-3(a) (West 2002).

Because we reverse the defendant's conviction, we also reverse the trial court's order that a DNA sampling is to be taken from the defendant.  

CONCLUSION

We reverse defendant’s conviction and sentence and, because we find the evidence sufficient to support a guilty verdict, we remand this cause for a new trial.

Reversed and remanded.

SOUTH, and HALL, JJ., concur.