THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HECTOR RODRIGUEZ, Defendant-Appellant.

First District (4th Division)   No. 1—04—3546

Opinion filed November 3, 2005.

QUINN, P.J., dissenting.

Michael J. Pelletier and Laila M. Velkme, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (James E. Fitzgerald, William Toffenetti, and Paula Borg, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Following a bench trial, defendant Hector Rodriguez was found guilty of possession of a controlled substance and was sentenced to three years in prison. On appeal, defendant contends that he is entitled to a new trial because the record does not indicate that he knowingly and intelligently waived his right of confrontation when his attorney stipulated that a proper chain of custody was maintained over the items recovered from defendant and that the items tested positive for the presence of cocaine. Defendant further contends that the court's order, entered pursuant to section 5—9—1.1(c) of the Unified Code of Corrections (the Code) (730 ILCS 5/5—9—1.1(c) (West 2004)), that he pay $5 to the Spinal Cord Injury Paralysis Cure Research Trust Fund (the Spinal Cord Injury Research Fund) violates his due process rights because the $5 assessment is not rationally related to the offense of possession of a controlled substance.

At trial, Officer Marad Haleem testified that at 10 p.m. on February 14, 2004, a Ford Aerostar minivan driven by defendant drove past his marked car. Officer Haleem observed that the minivan's taillight was broken and pulled the minivan over into a gas station parking lot. Officer Haleem approached the driver's side of the minivan and asked defendant to produce his driver's license and proof of insurance.

Defendant could not produce either document. Officer Haleem asked that defendant get out of the minivan and defendant complied. As Officer Haleem and defendant were walking back to Officer Haleem's squad car, defendant dropped three small bags. Officer Haleem recovered the bags, which he suspected contained crack cocaine, arrested defendant and placed defendant in the back of his squad car. Meanwhile, Officer Haleem's partner had walked to the minivan in which several passengers were still seated. When backup officers arrived, the remaining passengers were ordered out of the van and to put their hands on the top of Officer Haleem's squad car. Officer Haleem transported the items that defendant had dropped to the police station, where he inventoried them and gave them to the desk sergeant.

The parties stipulated that, if called, forensic scientist Pat Junious-Hawkins would testify that the items defendant dropped were kept in a proper chain of custody at all times and that their contents tested positive for the presence of cocaine.

Defendant's motion for a directed finding was denied.

Jackie Betancourt testified in defendant's case in chief that she and five other people were with defendant in the minivan at 10 p.m. on February 14, 2004. They were going to the gas station from defendant's house to buy cigarettes. Stephanie Ayala was in the front seat while Betancourt was in the back of the minivan. Defendant had pulled into the parking lot of the gas station and was outside of the minivan talking to a friend when a police car pulled up. One officer came up to the van and asked the passengers where they were going and what they were doing. A passenger named David Van "talked back" to the officer. Thereafter the officer ordered the passengers out of the minivan and instructed them to place their hands on the squad car. Everyone was handcuffed except for Ayala. Betancourt observed Ayala doing something with her hands. The police arrested defendant and David Van and allowed the other passengers to leave.

Ayala testified that she was one of seven passengers in the minivan on the evening of February 14, 2004. The group had driven to the gas station to buy cigarettes and candy. When she got into the minivan, Ayala had in her possession three rocks of crack cocaine. After the group had arrived at the gas station, the police approached the minivan from behind. Ayala could not remember if defendant was already standing outside of the minivan when he was approached by the police. The passengers were ordered to exit the minivan and to put their hands on a squad car and were handcuffed and searched. Before Ayala was searched, she threw her three bags of cocaine, which she was holding in her hands, under the squad car. A man Ayala referred

to as David Main and defendant were subsequently arrested, and the remaining passengers were allowed to leave. Ayala testified that she did not see anyone recover the cocaine bags and did not know what became of them.

The court remarked that defendant's witnesses' testimony was inconsistent and incredible and found defendant guilty of possession of a controlled substance. After considering arguments in mitigation and aggravation, the court sentenced defendant to three years in prison. Defendant was also ordered to pay various fines and fees, including a $5 assessment which was directed to the Spinal Cord Injury Research Fund.

On appeal, defendant first contends that his federal and state constitutional confrontation rights were violated because the record is devoid of any indication that his attorney informed him of the legal consequences of entering a stipulation as to the composition of the recovered substance and as to the chain of custody.

In *People v. Campbell*, 208 Ill. 2d 203, 220-21 (2003), our supreme court held:

> "[C]ounsel in a criminal case may waive his client's sixth amendment right of confrontation by stipulating to the admission of evidence as long as the defendant does not object to or dissent from his attorney's decision, and where the decision to stipulate is a matter of legitimate trial tactics or prudent trial strategy. Where the stipulation includes a statement that the evidence is sufficient to convict the defendant or where the State's entire case is to be presented by stipulation, we find that a defendant must be personally admonished about the stipulation and must personally agree to the stipulation."

In *People v. Phillips*, 352 Ill. App. 3d 867, 871 (2004), *appeal allowed*, 213 Ill. 2d 571 (2005), a panel of the Third District interpreted the *Campbell* holding to require "some affirmative showing or indication by the defendant in the record that he or she did not object to or dissent from the attorney's decision to stipulate." In *People v. Scott*, 355 Ill. App. 3d 741 (2005), another panel of the Third District found that *Phillips* had misinterpreted *Campbell*, and concluded that the record need not affirmatively show that the defendant was informed of and explicitly waived his confrontation rights. Several panels of this district have agreed with *Scott*. See *People v. Orta*, 361 Ill. App. 3d 342 (2005); *People v. Foerster*, 359 Ill. App. 3d 198 (2005); *People v. Banks*, 358 Ill. App. 3d 924 (2005).

In this case, nothing on the record indicates that defendant objected to the stipulation as to the chemical composition and chain of custody of the recovered items. The decision to stipulate to the forensic

chemist's testimony was a matter of trial strategy because the weight and nature of the recovered items were not contested and because the defense at trial was instead that Ayala, rather than defendant, possessed the items. See *Scott*, 355 Ill. App. 3d at 745 (stipulation as to weight and nature of recovered items was matter of trial strategy because weight and nature were not contested and defendant presented an alibi defense); *Orta*, 361 Ill. App. 3d at 351 (stipulation as to weight and nature of recovered items was matter of trial strategy because weight and nature were not contested and defendant's defense was that he was not in actual or constructive possession of the drugs). Furthermore, the stipulation did not indicate that the stipulated evidence was sufficient to convict defendant nor did the State present its entire case through stipulation. Accordingly, we find that the requirements of *Campbell* have been satisfied and that defendant's confrontation rights were therefore not violated.

Defendant next contends that his due process rights were violated when he was ordered to pay $5 to the Spinal Cord Injury Research Fund because the fund to which the assessment is directed does not bear a reasonable relationship to the offense of possession of a controlled substance.

The State responds that the assessment is punitive, rather than compensatory, in nature and, therefore, should be characterized as a "fine" rather than a "fee." Citing *People v. Wilson*, 144 Ill. App. 3d 290 (1986), the State argues that, therefore, no particular relationship between the offense and the fund for which proceeds of the fine are earmarked is required.

In *Wilson*, the defendant, who had been convicted of driving under the influence of alcohol, contended that a statute requiring him to pay fines to a driver's education fund and a violent crime victim's fund violated his due process rights because the purposes for which the funds were earmarked did not bear a rational relationship to the offense of which she had been convicted.[1] The appellate court noted that the legislature is granted substantial discretion in setting the nature and the extent of penalties for criminal conduct. The court noted:

> "We are unaware of a decision of a court of review in which the fact that the proceeds from a fine or penalty is earmarked for a particular fund serving a governmental purpose has affected the validity of the fine or penalty. *** No case has been called to our attention in which[,] as here, *** fines or penalties are earmarked for

---

[1]In *Wilson*, the parties agreed that the assessments to the driver's education fund and the violent crime victim's fund were fines as opposed to fees, taxes or costs.

a fund and a particular relationship has been required to exist between the offense for which the fine is imposed and the use to be made of the fund." *Wilson,* 144 Ill. App. 3d at 295.

The court distinguished the case before it from cases in which fees or taxes were earmarked for a particular purpose, noting that, in those cases, a reasonable relationship was required. Accordingly, the court found that the fines did not violate the dictates of due process.

The State further responds that, even if a reasonable relationship between the offense and the fund is required, because the use of controlled substances is likely a primary cause of automobile accidents, which are the primary cause of spinal cord injuries, the $5 assessment to the Spinal Cord Injury Research Fund is reasonably related to the offense of possession of a controlled substance.

Defendant replies that statutory language and nature of the $5 assessment reflect the legislature's clear intent that it be regarded as a fee. Nonetheless, defendant argues, even if the assessment is deemed a fine, because all legislative enactments are subject to the dictates of due process, it must still bear a reasonable relationship to the offense for which it is imposed.

Because we agree with defendant that the legislature intended that the assessment be treated as a fee rather than a fine, we need not address the disputed issue of whether the use of the proceeds of a fine must bear a reasonable relationship to the offense for which the fine is imposed.

Our determination of the nature of the assessment requires us to interpret the language of section 5—9—1.1(c). The cardinal rule of statutory interpretation is to ascertain and give meaning to the legislature's intent. *People v. Maggette,* 195 Ill. 2d 336, 348 (2001). The best means of determining legislative intent is to consider the statutory language. *Maggette,* 195 Ill. 2d at 348. In interpreting a statute, a court must consider the entire statute and interpret each of its relevant parts together. *Maggette,* 195 Ill. 2d at 348.

■ "As a means of determining legislative intent, case law has examined the substance of various assessments to determine whether they are more nearly 'fines' or 'fees' or 'costs.' " *People v. Bishop,* 354 Ill. App. 3d 549, 562 (2004). A "fine" is a pecuniary punishment imposed upon a defendant as part of his criminal sentence. *People v. Littlejohn,* 338 Ill. App. 3d 281, 283 (2003). A "cost" is a charge taxed by a court, such as a filing fee, a jury fee, a courthouse fee or a reporter fee. *People v. White,* 333 Ill. App. 3d 777, 781 (2002). A "fee," on the other hand, is a charge for labor or services, especially professional services. *White,* 333 Ill. App. 3d at 781. A fee is not punitive; rather, it is a collateral consequence of a defendant's conviction which is

compensatory in nature. *People v. Elizalde*, 344 Ill. App. 3d 678, 682 (2003). In interpreting statutory language, "an assessment's substantive character as being more nearly a 'fine' or a 'fee' or a 'cost' is relevant only to the extent that it is probative of legislative intent. Also relevant is the legislature's designation of the assessment as a 'fine,' 'fee,' or 'cost.' " *Elizalde*, 344 Ill. App. 3d at 682.

Section 5—9—1.1 provides:

> "(a) When a person has been adjudged guilty of a drug related offense involving possession or delivery of cannabis or possession or delivery of a controlled substance *** a fine shall be levied by the court at not less than the full street value of the cannabis or controlled substance seized.
>
> ***
>
> (b) In addition to any penalty imposed under subsection (a) of this Section, a fine of $100 shall be levied by the court, the proceeds of which shall be collected by the Circuit Clerk and remitted to the State Treasurer *** for deposit into the Trauma Center Fund ***.
>
> (c) In addition to any penalty imposed under subsection (a) of this Section, a fee of $5 shall be assessed by the court, the proceeds of which shall be collected by the Circuit Clerk and remitted to the State Treasurer *** for deposit into the Spinal Cord Injury Paralysis Cure Research Trust Fund. This additional fee of $5 shall not be considered a part of the fine for purposes of any reduction in the fine for time served either before or after sentencing." 730 ILCS 5/5—9—1.1 (West 2004).

This court recently construed a similar statute. In *Bishop*, the defendant was convicted of driving under the influence of drugs. The defendant was ordered to pay $100 and $5 assessments pursuant to sections 5—9—1(c—5) and (c—7) of the Code, which provided, in relevant part:

> " '[(c—5)] In addition to the fines imposed by subsection (c), any person convicted or receiving an order of supervision for driving under the influence of alcohol or drugs shall pay an additional $100 fee to the clerk. This additional fee, less 2½% that shall be used to defray administrative costs incurred by the clerk, shall be remitted by the clerk to the Treasurer within 60 days after receipt for deposit into the Trauma Center Fund. This additional fee of $100 shall not be considered a part of the fine for purposes of any reduction in the fine for time served either before or after sentencing. ***'
>
> ***
>
> '[(c—7)] In addition to the fines imposed by subsection (c), any person convicted or receiving an order of supervision for driving under the influence of alcohol or drugs shall pay an ad-

ditional $5 fee to the clerk. This additional fee, less 2¹/₂% shall be used to defray administrative costs incurred by the clerk, shall be remitted by the clerk to the Treasurer within 60 days after receipt for deposit into the Spinal Cord Injury Paralysis Cure Research Trust Fund. This additional fee of $5 shall not be considered a part of the fine for purposes of any reduction in the fine for time served either before or after sentencing.' " *Bishop*, 354 Ill. App. 3d at 561-62, quoting 730 ILCS 5/5—9—1(c—5), (c—7) (West 2002).

Because the quoted provisions were not in effect at the time of the defendant's offense, the defendant contended that the imposition of the assessments pursuant to those provisions was a violation of *ex post facto* laws. The appellate court noted that the "ban against *ex post facto* laws applies only to laws that are punitive in nature, and it does not apply to costs, which are compensatory in nature." *Bishop*, 354 Ill. App. 3d at 561. The court examined the provisions, noting:

"The plain language of the statute refers to both as 'fees.' If these 'fees' were meant to be considered 'fines,' then the legislature's decision to call them 'fees' would have no meaning. As in *Elizalde*, this language, by its repeated use of the word 'fee,' indicates an intent on the part of the legislature that an assessment made under sections 5—9—1(c—5) and (c—7) be treated as a fee and not a fine. [Citation.] Therefore, the fees assessed to defendant under sections 5—9—1(c—5) and (c—7) are compensatory, not punitive in nature, and are not subject to *ex post facto* violations." *Bishop*, 354 Ill. App. 3d at 562.

In this case, we recognize that the legislature has inexplicably labeled the $100 assessment to the Trauma Center Fund in section 5—9—1.1(b) a "fine" and labeled the $5 assessment to the Spinal Cord Injury Research Fund a "fee" in the contested subsection while labeling both assessments "fees" in sections 5—9—1(c—5) and (c—7). However, we assume that the legislature's labeling of the assessments was deliberate and observe that the plain language of subsection (c) of section 5—9—1.1 labels the $5 assessment a fee. Furthermore, we are unconvinced by the State's arguments that the legislature intended the $5 assessment to be treated as a fine because section 5—9—1.1 falls under article 9 of chapter V of the Code (730 ILCS 5/5—9—1 through 5—9—3 (West 2004)), which is entitled "Fines," and because the assessment is imposed only on defendants who have been convicted. Notably, other statutes falling under article 9 also impose fees, as opposed to fines, on only those defendants who are convicted of crimes. For example, section 5—9—1.4 requires defendants convicted of drug-related offenses to pay a "criminal laboratory analysis fee of $100." 730 ILCS 5/5—9—1.4(b) (West 2004). Accord-

ingly, pursuant to the plain language of the statute, we conclude that the legislature intended that the $5 assessment to be treated as a fee and we will therefore treat it as such.

■ Where, as here, a defendant challenges a legislative enactment that does not affect a fundamental constitutional right, the appropriate standard of review is the rational basis test. *People v. Lindner*, 127 Ill. 2d 174, 179 (1989). To survive the rational basis test, legislation must be reasonably designed to remedy the evils that the legislature has determined threaten public health, safety and general welfare. *People v. Sharpe*, 216 Ill. 2d 481, 531-32 (2005); *People v. Upton*, 114 Ill. 2d 362, 373 (1986). In applying the rational basis test, "we identify the public interest that the statute is intended to protect, examine whether the statute bears a reasonable relationship to that interest, and determine whether the method used to protect or further that interest is reasonable." *Lindner*, 127 Ill. 2d at 180.

The parties agree that the legislature's interest in enacting section 5—9—1.1(c) of the Code was to further the health of Illinois citizens by raising money for spinal cord injury research and that such is a legitimate public interest. However, defendant argues that the means the legislature has chosen to promote its interest are not reasonable.

Defendant analogizes the facts of this case to *Crocker v. Finley*, 99 Ill. 2d 444 (1984). As the State correctly points out, the plaintiff in *Crocker* challenged a fee statute, in part, on the grounds that it was an unreasonable or arbitrary classification for tax purposes which placed on some members of a class a burden not shared by others. Here, on the other hand, defendant challenges section 5—9—1.1(c) as a violation of the legislature's police power. However, we note that under either analysis the means adopted to protect the legitimate state interest must constitute a reasonable method to accomplish such an objective. See *City of Carbondale v. Brewster*, 78 Ill. 2d 111, 116 (1979) (police power may be exercised to protect public health, safety, morals and general welfare and "the legislation must bear a reasonable relationship to one of the foregoing interests which is sought to be protected, and the means adopted must constitute a reasonable method to accomplish such objective"); *Lindner*, 127 Ill. 2d at 180. Furthermore, the *Crocker* court considered both a police power and a power-to-tax challenge and specifically stated, in finding the statute unconstitutional, "[w]hether the additional filing fee provided for by the statute is imposed under the police power or the power to tax, the result we reach is the same." *Crocker*, 99 Ill. 2d at 457. Accordingly, we find, contrary to the State's contention, that *Crocker* is controlling.

In *Crocker*, the challenged statute required petitioners for dissolution of marriage to pay a $5 fee to fund shelters and services for

victims of domestic violence. The court found that the statute was unconstitutional because it conflicted with the litigants' constitutional right to obtain justice freely, denied the litigants equal protection and deprived the litigants of property without due process of law. The court focused on the means the legislature chose to fund the domestic violence shelters and programs and found:

> "These services are available to all adults and their dependents who are the subjects of domestic violence. [Citation.] As defined by statute, domestic violence can occur between any family or household members. [Citation.] Not surprisingly, then, there is no requirement that the recipients of the services be either married or divorced. Nevertheless, the legislature chose a tax on petitioners for dissolution of marriage as a means of funding the shelters and programs. We consider this choice to be an arbitrary use of the police power, inconsistent with due process guarantees." *Crocker*, 99 Ill. 2d at 456.

Defendant also compares the facts of this case to *Lindner*, in which the defendant, who had been convicted of criminal sexual assault and aggravated criminal sexual abuse, raised a due process challenge to a statute that prescribed the automatic revocation of his driver's license. The court stated that the public interest the State intended to protect was the promotion of safe and legal operation and ownership of motor vehicles. The court concluded that the method employed to further the interest did not bear a reasonable relationship to that interest because:

> "Keeping off the roads drivers who have committed offenses not involving vehicles is not a reasonable means of ensuring that the roads are free of drivers who operate vehicles unsafely or illegally. To the contrary, the means chosen are arbitrary, not only because the offenses specified in [the statute prescribing automatic revocation] have no connection to motor vehicles, but also because the inclusion of those offenses and no others is arbitrary. That is, no reason suggests itself as to why the legislature chose the particular offenses enumerated [in that statute], as opposed to other offenses not involving a vehicle." *Lindner*, 127 Ill. 2d at 183.

The State responds that this case is more similar to *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142 (2003). In *Arangold*, the plaintiff tobacco distributor raised a due process challenge to the Tobacco Products Tax Act of 1995 (35 ILCS 143/10—1 *et seq.* (West 2000)), which provided that proceeds from a tax on tobacco sales would be used to fund governmental programs providing long-term care for people financially unable to meet their medical needs. The supreme court rejected the plaintiff's contention, finding that the State had a legitimate interest in preserving the health of its citizens and assisting

the poor, that the General Assembly could have reasonably found that the use of tobacco products causes a need for long-term medical care and that those who supply the products should bear a measure of the costs associated with such care. The court distinguished the case before it from *Crocker*, noting that, in that case, the relationship between dissolution actions and domestic violence programs was too remote.

■ The State argues that, in enacting section 5—9—1.1(c), the General Assembly could have found that the possession of a controlled substance is related to driving under the influence of a controlled substance and that driving under the influence of a controlled substance causes automobile accidents, which are the primary cause of spinal cord injuries. The State argues, therefore, that the General Assembly could therefore have concluded that those who possess controlled substances should bear the costs of research to alleviate the injuries they cause. We disagree with the State's analysis. First, we note that the General Assembly presumably employed the reasoning propounded by the State in enacting section 5—9—1(c—7), which imposes a $5 fee, earmarked for the Spinal Cord Injury Research Fund, upon defendants convicted of "driving under the influence of alcohol *or drugs*." (Emphasis added.) 730 ILCS 5/5—9—1(c—7) (West 2004). While driving under the influence of a controlled substance arguably bears a rational relationship to spinal cord research, we cannot say that the simple possession of a controlled substance, an offense that does not involve or require the use of a motor vehicle, is reasonably related to spinal cord research. Furthermore, the parties have not called to our attention any other statutes that impose a fee earmarked for the Spinal Cord Injury Research Fund upon defendants whose crimes did not involve motor vehicles. Accordingly, we find the relationship between possession of a controlled substance and the Spinal Cord Injury Research Fund simply too attenuated to survive defendant's due process challenge.

For the above-stated reasons, we reverse the order that defendant pay a $5 fee to the Spinal Cord Injury Research Fund and affirm the remainder of the trial court's judgment.

Affirmed in part; reversed in part.

MURPHY, J., concurs.

PRESIDING JUSTICE QUINN, dissenting:

I respectfully dissent. I would hold that defendant has failed to meet his burden of establishing that section 5—9—1.1(c) (730 ILCS 5/5—9—1.1(c) (West 2004)) is unconstitutional. Statutes are presumed

constitutional, and a reviewing court has a duty to construe a challenged statute in a manner that upholds its validity and constitutionality if it can be reasonably done. *People v. Malchow*, 193 Ill. 2d 413, 418 (2000).

The majority's thorough analysis makes it clear that if the $5 required by section 5—9—1.1(c) is a "fine" as opposed to a "fee," the section is constitutional. As recognized by the majority, "the legislature is granted substantial discretion in setting the nature and the extent of penalties for criminal conduct." 362 Ill. App. 3d at 48, citing *People v. Wilson*, 144 Ill. App. 3d 290, 295 (1986) ("We are unaware of a decision of a court of review in which the fact that the proceeds from a fine or penalty is earmarked for a particular fund serving a governmental purpose has affected the validity of the fine or penalty").

Reading section 5—9—1.1 as a whole demonstrates that its language is ambiguous. Section 5—9—1.1 is part of chapter V of the Unified Code of Corrections, which chapter is entitled "Sentencing." 730 ILCS 5/5—9—1.1 (West 2004). Article 9 of this chapter is entitled "Fines." 730 ILCS 5/5—9—1.1 (West 2004). Further, section 5—9—1.1 imposes charges only upon those convicted of a felony drug offense. Thus, the holding in *Crocker v. Finley*, 99 Ill. 2d 444 (1984), is completely inapposite. *Crocker* struck down a filing fee required on all litigants filing dissolution petitions, finding that the fee was a burdensome litigation tax. In *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142 (2003), cited by the majority, our supreme court pointed out that the fees at issue in *Crocker* were placed upon a constitutionally protected activity—filing a court case. The same certainly cannot be said of persons subject to pay $5 under section 5—9—1.1(c).

Based on the above, I believe that section 5—9—1.1(c) may reasonably be construed as a constitutionally permissible fine and therefore this court has a duty to so construe it and uphold its validity. *People v. Malchow*, 193 Ill. 2d at 418.