NO. 4-04-0481          Filed: 12/15/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| HOWARD L. ROWELL, | ) | No. 03CF948 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | James E. Souk, |
| | ) | Judge Presiding. |

_____

JUSTICE COOK delivered the opinion of the court:

In March 2004, after a stipulated bench trial, the trial court found defendant, Howard L. Rowell, guilty

of retail theft of property having a retail value exceeding $150 (720 ILCS 5/16A-3(a) (West 2004)). Defendant

filed a motion for judgment of acquittal or, in the alternative, motion in arrest of judgment, and the court denied

the motion. In May 2004, the court sentenced defendant to 30 months' probation. Defendant appeals. We

affirm in part, vacate in part, and remand with directions.

I. BACKGROUND

On August 26, 2003, defendant was charged with the misdemeanor offense of theft by deception (720

ILCS 5/16-1(a)(2) (West 2002)). The information alleged that defendant sold store product belonging to his

employer, Electronics Boutique (EB), and kept the money for himself. On September 22, 2003, the theft-by-

deception charge was dismissed. On September 25, 2003, the State filed an information charging defendant

with the felony offense of retail theft of items valued at over $150. The information alleged that between July

15 and August 25, 2003, defendant knowingly took 15 electronic computer games valued at over $150 from

EB, a retail mercantile establishment, with the intent to permanently deprive the merchant of the use or benefit

of the property without paying the full retail value. On December 3, 2003, the State filed an information

labeled "count 2," which again charged defendant with felony retail theft from EB. Count II was similar to the

original information but added that the stolen items were 15 "Xbox Brand Video Games" and defendant

knowingly took these games "during a continuing course of conduct."

On January 26, 2004, defense counsel requested a bench trial and indicated the parties may proceed on stipulated evidence. The trial court admonished defendant as to his right to a jury trial. Defendant indicated he understood his right and tendered a written waiver of the right to a jury trial.

On March 10, 2004, the trial court held a bench trial. At the trial, defense counsel agreed with the State that defendant was willing to stipulate to the following: three police reports, a written statement by defendant given to EB, a summary of the cost of the games that were stolen from EB, a videotaped statement by defendant, and the fact that EB is a retail mercantile establishment. The reports outlined the following facts. The manager of EB reported that management had suspected defendant, an employee, of stealing games, selling them to friends, and pocketing the sale proceeds. To confirm its suspicions, a loss-prevention officer made a purchase from defendant, who sold an item at a reduced price and pocketed the money. When confronted, defendant admitted to the loss-prevention officer and manager that he stole games for himself and sold games at reduced rates to friends and then kept the money. Defendant gave a written statement to EB outlining his thefts.

Defense counsel stated he would not present any additional evidence. The trial court read the reports and asked for argument. The State argued that defendant's written statement showed defendant's guilt of the theft of the 15 video games. Defendant acknowledged he had taken about $367 worth of games, and a store employee listed the amount at $430.85. Defense counsel argued that the case presented no factual dispute and directed the court to count II. The court noted that count I had not been dismissed, and defense counsel responded his argument applied to either count. Counsel then stated that the information, particularly count II, is flawed. Count II's reference to a "continuing course of conduct" is not authorized by statute. Counsel argued that the most the evidence showed is "a bunch of misdemeanors, not a felony. I believe the felony is improperly charged here." Counsel pointed to the fact that the games had been taken over a series of dates and that the State could not prove that the games were taken in one transaction. The State responded that the phrase "during his employment with EB games" was "somewhat telling on that issue." The State also said that

the officer went into the details of how defendant was taking items during the videotaped statement. The court took the matter under advisement.

On March 24, 2004, the trial court entered an order, without explanation, convicting defendant on count II. On April 15, 2004, defendant filed a motion for judgment of acquittal or, in the alternative, motion in arrest of judgment. In the motion, defendant argued that the State improperly aggregated the value of the games by alleging that the individual thefts of the games were "during a continuing course of conduct" when what is required is proof that the acts were "in furtherance of a single intention and design." Defendant argued that the evidence did not prove a single intent or design and, at best, the evidence showed only multiple intents to take the games, which were individually valued at less than $150. Defendant claimed he should be acquitted of the felony charge. Also, defendant contended that the charging instrument was defective for failure to allege the specific felony mental state, in furtherance of a single intention and design, so the charge did not state an offense.

On May 24, 2004, the trial court responded to defendant's motion as follows, "Well, the court looked at that issue, and I believe there is some case law that directly supports the court's ruling on that, and the motion will be denied." The court sentenced defendant to 30 months' probation and 120 days in jail with 30 days to be served right away and the balance to be stayed pending review. The court also ordered defendant to pay $430.85 in restitution to EB and imposed the following fees, fines, and costs: "$200 [deoxyribonucleic acid (DNA)], $10 draw fee, $20 [Violent Crime Victims Assistance (VCVA)], $20 surcharge, $4 state[-]police fee." Defense counsel also requested a $200 public-defender fee, which the court granted without discussion.

On May 26, 2004, the trial court granted the State's motion to dismiss count I. This appeal followed.

II. ANALYSIS

On appeal, defendant presents nine issues for review. First, defendant argues that his felony conviction must be reduced to a misdemeanor because the State failed to prove the separate and individual thefts were in furtherance of a single intention and design. Second, defendant's felony conviction must be vacated because the information failed to allege defendant's conduct was in furtherance of a single intention and design and

- 3 -

defendant was prejudiced by this failure. Third, defendant's conviction must be vacated because he was not admonished pursuant to Supreme Court Rule 402 (177 Ill. 2d R. 402) and he was not admonished about the stipulations before his stipulated bench trial, which was tantamount to a guilty plea of misdemeanor retail theft. Fourth, defendant is entitled to two days' sentence credit and a $5-a-day credit for time served to be applied against a $4 penalty imposed by the trial court. Fifth, the reimbursement order for counsel fees should be vacated because the court failed to conduct a hearing before entering the fee order. Sixth, the restitution amount should have been reduced by the value of the recovered video games. Seventh, the county-board fee should have been $40, the amount allowed at the time of the filing, not $100, the amount allowed at the time defendant was convicted. Eighth, the $10 DNA testing "draw fee," the $20 fine surcharge, and the $4 penalty should not have been ordered. Ninth, the extraction and storage of defendant's DNA violated his fourth-amendment right to be free from unreasonable searches and seizures.

## A. Concessions

The State concedes the following issues. First, defendant is entitled to two days' sentence credit and $10 credit to be applied against the $4 penalty imposed. Second, the trial court failed to hold a hearing to determine defendant's ability to pay the reimbursement order for counsel fees, so that order should be vacated and we should remand for a hearing. Third, the $10 DNA-processing fee should be vacated, as should the $20 surcharge. We agree with these concessions.

Defendant was arrested on August 25 and released August 26, 2003, for misdemeanor theft. In September 2003, the misdemeanor was dismissed and replaced with a felony charge. Defendant argues he is entitled to sentencing credit for the two days he spent in custody for the misdemeanor charge. The State agrees that pursuant to subsection 5-8-7(c) of the Unified Code of Corrections (Corrections Code) (730 ILCS 5/5-8-7(c) (West 2004)), defendant is entitled to the two days. This provision states that "[a]n offender arrested on one charge and prosecuted on another charge for conduct which occurred prior to his arrest shall be given [sentence credit] *** for time spent in custody under the former charge not credited against another sentence." 730 ILCS 5/5-8-7(c) (West 2002). Because the felony-theft charge, which resulted in a conviction and

- 4 -

sentence, replaced the misdemeanor charge, defendant is entitled to the two days. See People v. Woznick, 209 Ill. App. 3d 1061, 1064, 568 N.E.2d 425, 427 (1991) (noting that council commentary demonstrates that section 5-8-7(c) applies when the offender is arrested on one charge and the original charge is dropped in favor of a new charge that results in conviction and imprisonment).

Defendant is also entitled to have the $4 state-police fee offset because section 110-14 of the Code of Criminal Procedure of 1963 (Criminal Code) provides that "[a]ny person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant." 725 ILCS 5/110-14 (West 2004). Because the $4 fee imposed pursuant to section 5-9-1(c-9) of the Corrections Code (730 ILCS 5/5-9-1(c-9) (West 2004)) is a fine, it should be offset by the $5-per-day credit. See People v. Jamison, 365 Ill. App. 3d 778, 782-83, 850 N.E.2d 846, 850-51 (2006).

The trial court also erred in ordering defendant to pay $200 in court-appointed counsel fees without first conducting a hearing on defendant's ability to pay pursuant to section 113-3.1(a) of the Criminal Code. 725 ILCS 5/113-3.1(a) (West 2004). The Illinois Supreme Court has held that "section 113-3.1 requires that the trial court conduct a hearing into a defendant's financial circumstances and find an ability to pay before it may order the defendant to pay reimbursement for appointed counsel." People v. Love, 177 Ill. 2d 550, 563, 687 N.E.2d 32, 38 (1997). In this case, the court ordered defendant to pay $200 in counsel fees without any discussion. Because the court failed to conduct a hearing, we vacate the reimbursement order and remand to the trial court for a hearing to determine defendant's ability to pay. See People v. Roberson, 335 Ill. App. 3d 798, 803-04, 780 N.E.2d 1144, 1148-49 (2002) (remanding for a hearing on the defendant's ability to pay counsel fees where the notice requirements were not followed, defendant was not given the opportunity to present evidence, and the record did not indicate the trial court considered defendant's financial affidavit).

Finally, the trial court imposed a $10 DNA-draw fee. This court has already determined that such a fee is not authorized by statute. People v. Hunter, 358 Ill. App. 3d 1085, 1094-95, 831 N.E.2d 1192, 1199 (2005) (holding that neither section 5-4-3(a) nor section 5-4-3(j) of the Corrections Code (730 ILCS 5/5-4-3(a),

(j) (West 2004)) authorizes a trial court to require a defendant to pay the cost of DNA collection). The court also erroneously imposed a $20 surcharge under section 5-9-1(c) of the Corrections Code. 730 ILCS 5/5-9-1(c) (West 2004). Section 5-9-1(c) adds to every fine imposed for a criminal offense "an additional penalty of $5 for each $40, or fraction thereof, of fine imposed." 730 ILCS 5/5-9-1(c) (West 2004). Because no fines were imposed, let alone $160 in fines, the trial court was not authorized to impose a $20 surcharge. The $10 DNA- draw fee and $20 surcharge are vacated.

### B. Sufficiency of the Evidence

Defendant argues that his felony retail-theft conviction must be reduced to a misdemeanor because the State failed to allege or prove that his conduct was in furtherance of a single intention and design. The State responds that evidence was sufficient to convict defendant of felony retail theft beyond a reasonable doubt.

Initially, we note that defendant argues that the standard of review should be de novo because the facts are not in dispute. The State, however, claims there is a factual dispute, namely whether the facts support an inference that defendant took the games on individual impulses or pursuant to a single intention and design. If a factual dispute exists, this court should review the sufficiency of the evidence by looking at whether the evidence is "so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt." People v. Smith, 185 Ill. 2d 532, 542, 708 N.E.2d 365, 370 (1999).

While the entire bench trial consisted of stipulated evidence, the parties debated as to whether the evidence showed defendant's conduct amounted to one transaction or a series of separate transactions. For the trial court to make this determination, it had to evaluate the facts presented and conclude whether a single transaction could be inferred. In reviewing defendant's contention of error, this court must determine whether the evidence supports the trial court's conclusion that a single transaction could be inferred. The Illinois Supreme Court has noted that "[w]hether the defendant acted in furtherance of a single intention and design and thus committed a single crime is a question of fact to be established at the trial of the case." People v. Brenizer, 111 Ill. 2d 220, 228, 489 N.E.2d 862, 866 (1986). Because we are looking at whether the undisputed facts could give rise to an inference that defendant had a specific intent, we review a factual determination, and

sufficiency-of-the-evidence review is appropriate.

To prove defendant guilty of felony retail theft in this case, the State must show that the amount of stolen property was over $150. 720 ILCS 5/16A-10(3) (West 2004). In this case, defendant stole 15 games all worth less than $49.99 over a period of six weeks. This series of thefts, which otherwise may have constituted a series of misdemeanor thefts, may be charged as a single felony "when it is alleged that the acts were in furtherance of a single intention and design to obtain the property of a single owner." Brenizer, 111 Ill. 2d at 226, 489 N.E.2d at 865; see also 725 ILCS 5/111-4(c) (West 2004). For the State to prove defendant guilty of the felony, it had to prove that the multiple acts of theft were in furtherance of a single intention and design.

The State failed to allege in the charging instrument or at the stipulated bench trial that defendant acted "in furtherance of a single intention and design." Instead, the State mistakenly argued that defendant's actions amounted to a "continuing course of conduct." At the trial, defense counsel correctly argued that "continuing course of conduct" is not an element of the offense. Defense counsel went on to argue that the State had only shown a series of misdemeanors and had not shown defendant committed one felony. After taking the matter under advisement, the trial court determined that defendant did commit one felony as opposed to a series of misdemeanors. When defense counsel pointed out for the first time in a posttrial motion that the State failed to allege the single-intention-and-design element, the court stated that it considered that issue in determining that defendant committed a felony.

While the State's failure to properly charge and argue the single-intention-and-design element of the felony is disturbing, the evidence nonetheless supports the inference that defendant acted with a single intention and design. Defendant took the 15 games from his employer during his employment over the span of approximately 42 days. Also, while not charged with these thefts, defendant admittedly sold games 25 times at reduced prices and pocketed the money. Defendant stated he stole because "[he has] money problems and didn't think about the consequences that would come along with this." Defendant spread out these two different types of thefts over the six to seven weeks that he had been employed with EB, which made it less likely that

- 7 -

management would notice the missing money and merchandise.

Defendant argues that the fact that he stole the games over six weeks shows that the games were taken as the product of a number of individual impulses and that had he taken them all within a couple of days, the inference that he had a single plan would be stronger. The evidence, though, just as clearly shows that defendant had money troubles and he systematically stole small amounts of money and merchandise from his employer during most of his employment in a manner that was less likely to raise suspicion. Stealing the 15 games all at once or within a couple of days would have been much more noticeable and likely to immediately raise alarm. The evidence supports the inference that defendant stole the 15 games over a period of time with the single intention and design of stealing games he desired without raising too much suspicion. The fact that he was simultaneously stealing games and pocketing money during his short time as an employee supports the inference that he had a single intention and design to steal whatever he could from his employer.

Despite the State's failure to correctly argue the elements of the felony theft, the trial court was aware of what needed to be proved based on its claim in the posttrial motion hearing. Further, because the evidence is not so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt, we will not reverse defendant's felony conviction.

### C. The Charging Instrument

Defendant claims his felony retail-theft conviction must be vacated because the information filed by the State failed to allege an essential element of felony retail theft and defendant was prejudiced by the error.

As stated above, the State failed to properly allege in the information the essential element that defendant's mental state was to act in furtherance of a single intention and design. Count II, the count of which defendant was convicted, alleged that on or about July 15, 2003, through August 25, 2003, defendant committed retail theft over $150, a Class 3 felony in violation of section 16A-3(c) of the Criminal Code of 1961 (720 ILCS 5/16A-3(c) (West 2004)):

"In that during a continuing course of conduct, he knowingly took possession of fifteen XBOX brand video games, which were items of merchandise offered for sale at [EB], a retail mercantile

- 8 -

establishment, with the intent to permanently deprive said merchant of the possession, use or benefit of said merchandise, without paying the full retail value of said merchandise, said merchandise having a value exceeding $150."

"The timing of a defendant's challenge to a charging instrument that fails to state an offense has been considered significant in determining whether a defendant is entitled to reversal of his conviction on that ground." People v. Benitez, 169 Ill. 2d 245, 257, 661 N.E.2d 344, 350 (1996). When defendant challenges a charging instrument for the first time after the commencement of trial, an error in the charging instrument will only require reversal where the error was prejudicial. People v. Cuadrado, 214 Ill. 2d 79, 86, 824 N.E.2d 214, 219 (2005). Under the prejudice standard, a charge will be sufficient if it "'"appraised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecutions arising out of the same conduct."'" Cuadrado, 214 Ill. 2d at 86-87, 824 N.E.2d at 219, quoting Benitez, 169 Ill. 2d at 257, 661 N.E.2d at 350, quoting People v. Gilmore, 63 Ill. 2d 23, 29, 344 N.E.2d 456, 460 (1976).

While we agree that the information was deficient in that the State failed to allege in the charging instrument an element of the offense, namely the "in furtherance of a single intention and design" element, we find defendant has not shown prejudice.

Despite the missing element, defendant was apprised of the fact that he faced felony retail theft for stealing over $150 in merchandise from EB. Defendant knew that each game he stole was worth less than $50, so the State would have to link the individual thefts to prove the felony. Further, when the State added count II, it was clear from the "continuing course of conduct" addition that the State was focusing on aggregating the individual thefts to show they were all linked in order to get above the $150 minimum. Defendant clearly knew that the State had to show that the individual thefts were in essence one theft. Defendant's knowledge is apparent as defense counsel argued at trial that the "continuing course of conduct" language was incorrect and argued that the State had not shown that the individual thefts were in any way linked. Defense counsel stated that the most the evidence showed was "a bunch of misdemeanors, not a felony." Defendant essentially argued,

therefore, that the State had not shown and could not show a single felony occurred.

Defendant nevertheless claims he was prejudiced at trial because while he knew the "continuing course of conduct" language was incorrect, he could not argue the lack of "in furtherance of a single-intention-and-design" evidence because he did not know about the single intention and design element. First, it is not clear how defense counsel would have prepared differently had he known the precise missing language. Defendant already argued that the evidence only showed a series of misdemeanors and not one felony. This is the same argument he makes now in his appeal. Also, defense counsel suddenly realized that "in furtherance of a single intention and design" was an element after he was convicted as he included that argument in a posttrial motion. Defendant was able, therefore, to present his argument to the trial court, and the trial court had the opportunity to vacate the felony conviction based on the missing-element argument. In ruling on the posttrial motion, the court stated that it considered the single-intention-and-design element and dismissed defendant's posttrial motion.

Because defendant was not prejudiced by the deficient charging instrument, we affirm his conviction.

### D. Admonishments

If this court does not vacate defendant's conviction based on insufficient evidence or an insufficient charging instrument, defendant claims we must vacate the conviction because the trial court did not admonish him according to Illinois Supreme Court Rule 402 (177 Ill. 2d R. 402) at his stipulated bench trial, which he claimed was tantamount to a guilty plea of misdemeanor theft. Alternatively, defendant was not personally admonished about the State proceeding entirely on stipulations and his agreement to the stipulations was not obtained by the court.

First, defendant's stipulated bench trial was not tantamount to a guilty plea requiring Rule 402 admonishments. In arguing he should have been admonished, defendant points to People v. Davis, 286 Ill. App. 3d 686, 676 N.E.2d 675 (1997). In arguing against the admonishments, the State points to People v. Horton, 143 Ill. 2d 11, 570 N.E.2d 320 (1991).

In Horton, the Supreme Court of Illinois reviewed a defendant's two stipulated bench trials and

determined that one trial was not tantamount to a guilty plea but the other trial was.  Defendant was charged with armed robbery, armed violence, and aggravated battery in both trials.  In his first stipulated bench trial, defense counsel stipulated to the State's evidence and commented in closing arguments that the evidence was sufficient to convict, but counsel also presented and preserved a defense that the trial court should have granted defendant's motions to quash arrest and suppress a lineup.  Horton, 143 Ill. 2d at 14-16, 570 N.E.2d at 321-22.  The court held that "a stipulated bench trial is not tantamount to a guilty plea if the defendant presented and preserved a defense."  Horton, 143 Ill. 2d at 22, 570 N.E.2d at 325.  The court went on to hold, though, that the second stipulated bench trial was tantamount to a guilty plea despite the fact that defendant presented and preserved a defense because defense counsel "in fact stipulated to the sufficiency of the evidence to convict." (Emphasis in original.)  Horton, 143 Ill. 2d at 22, 570 N.E.2d at 325.

In this case, defense counsel never stipulated to the sufficiency of the evidence to convict.  Defense counsel only stipulated to the reports, written statement, video confession, and fact that EB was a retail mercantile establishment.  Counsel argued that "at most this evidence shows a bunch of misdemeanors" and "I don't think the State can prove they were taken all in one chunk."  Further, counsel presented and preserved a defense that the evidence was insufficient to convict defendant of the charged offense because the State could not prove defendant stole items worth over $150 because the State could not show the games worth under $50 were taken all at once or in any way linked.  Defense counsel also argued that the charging instrument was defective because it included the "continuing course of conduct" language.

In Davis, defense counsel stipulated to the facts on the two charges of improper lane usage and operating a motor vehicle when the defendant's license was revoked for driving under the influence of alcohol.  Defense counsel did not object when the State informed the court that the defendant admitted he was guilty of misdemeanor driving while license revoked and only contended that he is not guilty of felony driving while license revoked.  Davis, 286 Ill. App. 3d at 687, 676 N.E.2d at 676.  While the court acknowledged that the defendant did not stipulate that the evidence was sufficient to convict, the defendant also "did not present or preserve any defense" and the only issue in the case was "whether a prior summary suspension could be used

- 11 -

to enhance the offense of driving while license revoked to a felony." Davis, 286 Ill. App. 3d at 689, 676 N.E.2d at 677-78.

In Davis, defense counsel did not argue that the facts were insufficient to establish that the defendant was guilty of the felony rather than the misdemeanor. Instead, defense counsel argued the statute could not be interpreted to convict the defendant of a felony. In this case, defense counsel essentially argued that the evidence was not sufficient to show that defendant took the 15 items at once or that his taking of the 15 items could be lumped together to reach the $150 minimum. Unlike in Davis where the issue was how the statute should be interpreted, the issue in this case was whether the stipulated facts were sufficient to support an element of the charge.

Because defendant did not stipulate to the sufficiency of the evidence to convict, contested the sufficiency of the evidence to convict of the crime charged, and presented and preserved a defense, the trial court was not required to issue Rule 402 admonishments.

Defendant, citing People v. Campbell, 208 Ill. 2d 203, 221, 802 N.E.2d 1205, 1215 (2003), argues, in the alternative, that this court must reverse because defendant was not personally admonished about the fully stipulated bench trial and did not personally agree to the stipulation. In Campbell, defense counsel agreed to the stipulation of facts concerning a material witness's testimony. On appeal, defendant argued that his constitutional right to be confronted with his accuser was denied when his defense counsel agreed to stipulate to the testimony of the State's primary witness. Campbell, 208 Ill. 2d at 209, 802 N.E.2d at 1208. The Supreme Court of Illinois held that defense counsel may waive a client's sixth-amendment right of confrontation by stipulating to the admission of evidence as long as the defendant does not object to or dissent from the attorney's decision, and where the decision to stipulate is a matter of legitimate trial tactics or prudent trial strategy. Campbell, 208 Ill. 2d at 220-21, 802 N.E.2d at 1215.

After announcing the holding, the Campbell court went on to state "Where the stipulation includes a statement that the evidence is sufficient to convict the defendant or where the State's entire case is to be presented by stipulation, we find that a defendant must be personally admonished about the stipulation and

must personally agree to the stipulation." Campbell, 208 Ill. 2d at 221, 802 N.E.2d at 1215. Defendant relies on this statement to support his argument that the trial court had to personally admonish him and obtain his consent to the stipulation. Earlier in the opinion, though, the court stated that the appellate court "correctly recognized in this case, when the State's entire case is to be presented by stipulation and the defendant does not present or preserve a defense [citation], or where the stipulation includes a statement that the evidence is sufficient to convict the defendant, the stipulation implicates fundamental due[-]process concerns and can only be waived by the defendant personally." (Emphasis added.) Campbell, 208 Ill. 2d at 218, 802 N.E.2d at 1213. In a later opinion, the Supreme Court of Illinois again noted that admonishments are not necessary if "the State's entire case is not presented by stipulation, the defendant does present or preserve a defense, and the stipulation does not include a statement that the evidence is sufficient to convict." (Emphasis in original.) People v. Phillips, 217 Ill. 2d 270, 288, 840 N.E.2d 1194, 1205 (2005).

As we noted in this case, defendant did present and preserve a defense. Defendant argued that the evidence was not sufficient to convict him of the felony and that the charging instrument was deficient. While the State's entire case was presented by stipulation, defendant did not need to be admonished concerning the stipulations because he presented and preserved a defense and the stipulated trial was not tantamount to a guilty plea to felony retail theft.

E. Restitution Amount

Defendant argues that the trial court erred in imposing a restitution amount that reflected the retail value of the stolen games without crediting the value of the recovered video games against the restitution amount.

Section 5-5-6(b) of the Corrections Code provides that the trial court "shall allow credit for property returned in kind *** and for property ordered to be restored by the defendant; and after granting the credit, the court shall assess the actual out-of-pocket expenses, losses, damages, and injuries suffered by the victim named in the charge." 730 ILCS 5/5-5-6(b) (West 2004). While defendant gave the stolen games to police, the record is devoid of any indication that the merchandise was returned to EB. Further, the record does not establish that

the trial court was presented with evidence that the returned games had any value to EB or reduced EB's actual out-of-pocket losses. Had the games been returned or of any value, defense counsel should have presented such evidence to the court. As the record does not indicate that the court failed to allow a credit, remand on the restitution issue is not appropriate.

### F. County-Board Fee

Defendant argues that the circuit court clerk erred in applying a $100 county-board fee, the fee set by the county board between the filing of count I and defendant's conviction, rather than $40, the fee set at the time count I was filed. The State responds that defendant has forfeited review of this argument by not filing a postsentencing motion. Further, the State argues that the $100 fee was appropriate because the fee is not assessed against a defendant until a court enters a judgment against him. If defendant is acquitted, defendant does not have to pay. In this case, because the fee increase occurred before count II was filed and before defendant was convicted on count II, the clerk appropriately charged defendant the fee increase that was in effect at the time of the conviction on count II. We agree with the State.

Count I was filed against defendant on September 25, 2003. On October 21, 2003, the McLean County board increased the fee for felony complaints from $40 to $100. Count II was filed against defendant on December 3, 2003. The fee increase became effective January 1, 2004. Defendant was found guilty of count II on March 24, 2004. The McLean County circuit clerk's office originally typed $40 as the filing fee but later wrote 10 over the 4, changing the amount to $100.

Defendant assumes that the determinative date for the filing fee was the date the first count was filed. Section 27.1a(w)(1) of the Clerks of Courts Act (Clerks Act) states that "[t]he clerk shall be entitled to costs in all criminal and quasi-criminal cases from each person convicted." 705 ILCS 105/27.1a(w)(1) (West 2004). The costs, therefore, are incurred from the initial filing through the conviction and are not assessed until the defendant is convicted. The costs are not simply incurred at the initial filing and then stop. The costs cover all filings up through the conviction. Because the fee is not assessed against the defendant until the court enters judgment against that defendant, the fee required at the time of the assessment should apply as that would cover

"all costs" from the "person convicted."

## G. DNA Extraction and Storage

Section 5-4-3 of the Corrections Code requires all felons to submit a specimen of blood, saliva, or tissue to the Illinois State Police computer databases. 730 ILCS 5/5-4-3(a) (West 2004). The Supreme Court of Illinois recently rejected the argument that the compulsory extraction and perpetual storing of DNA under section 5-4-3 violates a felon's fourth-amendment right against unreasonable searches and seizures. People v. Garvin, 219 Ill. 2d 104, 847 N.E.2d 82 (2006). This court is bound by the Illinois Supreme Court's decision.

## III. CONCLUSION

For the reasons stated, we affirm defendant's conviction, the restitution amount, the county board fee, and the DNA order; modify the sentence to reflect two days' sentence credit and a $10 credit to be applied against the $4 penalty imposed; vacate the $10 DNA-processing fee and $20 surcharge; vacate the $200 counsel fee; and remand with directions to hold a hearing on the counsel fee and issue an amended judgment of sentence.

Affirmed in part and vacated in part; cause remanded with directions.

MYERSCOUGH, J., concurs.

STEIGMANN, P.J., specially concurs.

PRESIDING JUSTICE STEIGMANN, specially concurring,

Although I fully agree with the court's opinion in this case, I specially concur to express concerns about--and suggestions regarding--Illinois law on stipulations in criminal cases.

## I. AN ANALYSIS OF ILLINOIS LAW ON STIPULATIONS IN CRIMINAL CASES

### A. Background

In People v. Campbell, 332 Ill. App. 3d 808, 773 N.E.2d 218 (2002), the defendant, who had been convicted of criminal trespass to a residence, argued on appeal that he had been denied his constitutional right to confront the witnesses against him because, absent his knowing consent, defense counsel stipulated to the testimony of a key State's witness. This court held that, with two exceptions, defense counsel can stipulate to prosecution testimony without a defendant's knowing consent because the decision to stipulate is a matter of trial strategy within defense counsel's sound judgment. The two exceptions arise under the following situations: (1) when the State's entire case is to be presented by stipulation or (2) when the stipulation includes a statement that the evidence is sufficient to convict the defendant. Campbell, 332 Ill. App. 3d at 814, 773 N.E.2d at 223. The supreme court affirmed the Fourth District's judgment, but--regrettably--not on the same basis. Instead, the supreme court wrote the following: "We agree that defense counsel may waive a defendant's right of confrontation as long as the defendant does not object and the decision to stipulate is a matter of trial tactics and strategy. *** We therefore affirm the appellate court's finding that defense counsel may stipulate to the admission of evidence and thereby waive his client's constitutional right to confrontation." (Emphasis added.) Campbell, 208 Ill. 2d at 217, 802 N.E.2d at 1213.

### B. The Supreme Court's Discussion in Campbell of the Decisions Belonging Personally to the Defendant

In Campbell, the supreme court addressed whether the decision to stipulate to certain State's evidence is one of those decisions that belongs personally to the criminal defendant. The court began its analysis by discussing its decision in People v. Ramey, 152 Ill. 2d 41, 604 N.E.2d 275 (1992), as follows:

"In People v. Ramey, 152 Ill. 2d 41, 604 N.E.2d 275 (1992), this court held that there are four

decisions that ultimately belong to the defendant in a criminal case after consultation with his attorney: (1) what plea to enter; (2) whether to waive a jury trial; (3) whether to testify in his own behalf; and (4) whether to appeal. Ramey, 152 Ill. 2d at 54[, 604 N.E.2d at 281]. This court then stated that:

'Beyond these four decisions, however, trial counsel has the right to make the ultimate decision with respect to matters of tactics and strategy after consulting with his client. Such matters include what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike and what trial motions should be made. [Citation.] Such matters also include the defense to be presented at trial.' Ramey, 152 Ill. 2d at 54[, 604 N.E.2d at 281].

This court then held that the defendant's constitutional right to due process was not violated when his trial counsel presented a defense against defendant's wishes, because the defense theory to be presented at trial is not one of the matters that a defendant has the ultimate right to decide. Ramey, 152 Ill. 2d at 54[, 604 N.E.2d at 281]." Campbell, 208 Ill. 2d at 210, 802 N.E.2d at 1209.

The Campbell court then discussed its decision in People v. Brocksmith, 162 Ill. 2d 224, 642 N.E.2d 1230 (1994). In that case, the supreme court held that in addition to the decisions specified in Ramey, a defendant also had the exclusive right to decide whether to submit an instruction on a lesser-included offense at the conclusion of the evidence. Brocksmith, 162 Ill. 2d at 229, 642 N.E.2d at 1232. The court reasoned that (1) the decision to tender a lesser-included offense is analogous to the decision of what plea to enter and (2) the two decisions should be treated the same. Brocksmith, 162 Ill. 2d at 229, 642 N.E.2d at 1232. Consequently, because defense counsel rather than the defendant made the ultimate decision to tender a lesser-included offense instruction, the defendant's conviction on the lesser-included offense was reversed. Brocksmith, 162 Ill. 2d at 229-30, 642 N.E.2d at 1233.

C. The "As Long As" Clause of Campbell

After discussing Ramey and Brocksmith, the Campbell court took a different approach in addressing

- 17 -

a defendant's role when defense counsel stipulates to the admission of evidence. In Ramey and Brocksmith, the supreme court held that apart from the five decisions that belong personally to the defendant, defense counsel has decision-making authority after consulting with the defendant. In Campbell, however, the court held that when it comes to the question of whether to stipulate to evidence, defense counsel has decision-making authority "as long as the defendant does not object and the decision to stipulate is a matter of trial tactics and strategy." (Emphasis added.) Campbell, 208 Ill. 2d at 217, 802 N.E.2d at 1213. Thus, under Campbell's "as long as" clause, defense counsel has the authority to enter into a binding stipulation unless one of two things happen: (1) the defendant objects or (2) the trial court or a reviewing court concludes that counsel's decision to stipulate does not rise to the level of trial tactics and strategy. Campbell, 208 Ill. 2d at 217, 802 N.E.2d at 1213.

### 1. The Objection Prong of Campbell's "As Long As" Clause

#### a. Cases Interpreting Campbell's First Prong

In People v. Phillips, 352 Ill. App. 3d 867, 817 N.E.2d 566 (2004) (Phillips II), the Third District interpreted the first prong of Campbell's "as long as" clause. In that case, the defendant was charged with several drug offenses. At her trial, the prosecutor and defense counsel stipulated to the admission in evidence of laboratory reports establishing the identity and weight of the drugs at issue. The laboratory technician who tested and weighed the drugs did not testify at the defendant's trial, but the record contained no showing that the defendant objected to the admission of the lab reports by stipulation. Phillips II, 352 Ill. App. 3d at 868, 817 N.E.2d at 568. The Third District had initially affirmed the defendant's conviction, rejecting her claim that the admission of the stipulation violated her right of confrontation. People v. Phillips, 326 Ill. App. 3d 157, 759 N.E.2d 946 (2001) (Phillips I). However, in People v. Phillips, 208 Ill. 2d 550, 804 N.E.2d 1066 (2004), the Supreme Court of Illinois vacated that decision and remanded the cause to the Third District to reconsider its judgment in light of the supreme court's decision in Campbell. On remand, the Third District reversed the defendant's conviction, explaining as follows:

> "Construing the fundamental constitutional right [of confrontation] in conjunction with the

- 18 -

supreme court's decision in Campbell, we conclude that in order to waive the defendant's sixth [-]amendment right of confrontation by stipulating to the admission of evidence, there must be some affirmative showing or indication by the defendant in the record that he or she did not object to or dissent from the attorney's decision to stipulate. ***

*** [T]he requirement of a voluntary, knowing[,] and intelligent waiver is inherent in defendant's election not to object to stipulating and *** there needs to be some evidence in the record that defendant knowingly waived [his right to confrontation]. That is to say[,] that he or she was advised of the right to confront witnesses and of the nature and legal impact of waiving that right through the proposed stipulation, and either concurred with or objected to it." (Emphasis in original.) Phillips II, 352 Ill. App. 3d at 871, 817 N.E.2d at 570-71.

The Third District then considered the record before it in light of its interpretation of Campbell and concluded as follows:

"[A] review of the record in the present case discloses nothing that demonstrates (or even suggests) that the attorney explained to [the defendant] what decisions were generally made by him absent her objection or, more specifically, what a stipulation is and its legal impact, what he intended to stipulate to, and what the implications were of stipulating to the specific data in the lab reports. A failure to provide the defendant with that basic information deprives her of a meaningful opportunity to make a reasoned objection. Nor is there any representation by the attorney to the court that he discussed these matters with his client and she did not object. In a situation such as the one suggested by nothing more than the absence of an objection in the instant record, the defendant would have needed a combination of some rudimentary understanding of the legal concept of stipulation (which we do not believe can be fairly assumed) and enough luck to 'alert' to the word in the course of the trial. Such a hit[-]or[-]miss proposition simply cannot result in either a reasoned objection or a knowing and voluntary assignment of her right to waive confrontation to her attorney, and we do not believe that it was the intent of our supreme court to validate a complete disregard of a defendant's

- 19 -

interest in this constitutional right."  Phillips II, 352 Ill. App. 3d at 872, 817 N.E.2d at 571.

Thus, the Third District held that when a defendant is stipulating to the admission of evidence, the record must affirmatively show that he was (1) advised of his right to confrontation, (2) informed of the impact of waiving that right, and (3) either concurred with or objected to that waiver.

Since Phillips II, several decisions from the First and Third District Appellate Courts rejected the Phillips court's approach and have held that the record need not affirmatively show that the defendant was informed of, and explicitly waived, his confrontation-clause rights.  In each case, the appellate court concluded that the supreme court's Campbell decision did not require such an affirmative showing.  See People v. Scott, 355 Ill. App. 3d 741, 745, 824 N.E.2d 302, 307 (2005) (in which a different panel from the Third District Appellate Court held that the Phillips II court misinterpreted Campbell); People v. Banks, 358 Ill. App. 3d 924, 926, 833 N.E.2d 928, 930 (2005); People v. Foerster, 359 Ill. App. 3d 198, 200, 833 N.E.2d 942, 944 (2005); People v. Orta, 361 Ill. App. 3d 342, 350-51, 836 N.E.2d 811, 818-19 (2005); People v. Rodriguez, 362 Ill. App. 3d 44, 47-48, 839 N.E.2d 543, 546-47 (2005).

The supreme court has now reversed the Third District in Phillips II and rejected the concerns the appellate court expressed therein.  In Phillips, 217 Ill. 2d at 288, 840 N.E.2d at 1205 (Phillips III), the supreme court reversed the Third District and explained as follows:

"In sum, it is not necessary for either the court or counsel to admonish a defendant about the implications and consequences of a stipulation, and defendant's explicit agreement to the stipulation on the record is not required where, as here, (1) defense counsel's decision to stipulate appears to have been a matter of trial tactics and strategy and defendant does not object to counsel's decision, and (2) the State's entire case is not presented by stipulation, the defendant does present or preserve a defense, and the stipulation does not include a statement that the evidence is sufficient to convict."  (Emphasis in original.)

Even more recently, in People v. Medina, 221 Ill. 2d 394, 404-08, 851 N.E.2d 1220, 1225-28 (2006), the supreme court (when discussing what admonitions, if any, a defendant must receive informing him about

his personal right to seek a lesser- included-offense instruction) reaffirmed its decisions both in Campbell and Phillips III.

b. Further Discussion of the Objection Prong

For the reasons that follow, I respectfully conclude that the supreme court's standard for dealing with stipulations will likely prove unworkable.

In Campbell, the supreme court wrote that defense counsel may waive a defendant's right of confrontation as long as the defendant does not object. Campbell, 208 Ill. 2d at 217, 802 N.E.2d at 1213. However, left unspoken is what happens if the defendant does object. In other words, does his objection trump the decision of his trial counsel to stipulate to the evidence at issue? Under Campbell, the answer appears to be "yes."

Such an approach makes sense with regard to the five decisions personally belonging to the defendant. In such cases, the defendant's wishes trump any position of defense counsel to the contrary. For instance, a defendant possesses the personal right to decide whether to take the witness stand even if his trial counsel believes his decision to be unwise. Similarly, a defendant can insist on having a jury trial (or a bench trial) even if his trial counsel believes that decision to be unwise.

However, in situations in which the issue is one addressed to trial counsel's judgment, not the defendant's, such an approach makes no sense. For instance, in Ramey, a death-penalty murder case, the defendant's trial counsel presented a defense of self-defense against his client's wishes, yet the supreme court affirmed. In so concluding, the court cited the American Bar Association (ABA) standards for criminal justice that provide that trial counsel has the right to make the ultimate decision with respect to matters of tactics and strategy, after consulting with his client. Ramey, 152 Ill. 2d at 53-54, 604 N.E.2d at 281; 1 ABA Standards for Criminal Justice §4-5.2 (2d ed. Supp. 1986). Ramey did not indicate how much "consulting with his client" defense counsel did in that case, but however much occurred, it was apparently not enough to persuade the defendant that his counsel's strategy was correct.

Following the supreme court's decision in Ramey, Illinois courts of review have repeatedly reiterated

how trial counsel is in total control of the case except for the decisions Ramey identified as belonging to the defendant. See, for instance, People v. Reid, 179 Ill. 2d 297, 310, 688 N.E.2d 1156, 1162 (1997) ("Decisions concerning which witnesses to call at trial and what evidence to present on [the] defendant's behalf ultimately rest with trial counsel"); People v. Hamilton, 361 Ill. App. 3d 836, 847, 838 N.E.2d 160, 170 (2005) ("Generally, decisions concerning which witnesses to call and which evidence to present on a defendant's behalf are viewed as matters of trial strategy"); People v. Patterson, 347 Ill. App. 3d 1044, 1054, 808 N.E.2d 1159, 1167 (2004) ("The decision whether to call particular witnesses and the manner and extent of cross-examination are matters of trial strategy and thus will not ordinarily support an ineffective-assistance-of-counsel claim"); People v. McKinney, 260 Ill. App. 3d 539, 546, 631 N.E.2d 1281, 1288-89 (1994) (an attorney's decision as to how or whether to cross-examine a witness is generally a matter of trial strategy); People v. Campbell, 264 Ill. App. 3d 712, 732, 636 N.E.2d 575, 589 (1992) (trial counsel is in charge of what questions to ask prospective jurors during voir dire examination).

Although, as the Ramey court stated, a defendant's trial counsel should no doubt "consult[] with his client" with regard to matters of tactics and strategy (Ramey, 152 Ill. 2d at 54, 604 N.E.2d at 281), in neither Ramey nor any of the foregoing cases (or any others I have found) is there any hint that the defendant, by stating his objection to his counsel's actions, is thereby entitled to trump them. Yet, that is exactly what Campbell seems to hold--that a defendant's objection to his trial counsel's strategic decision to stipulate to some of the State's evidence trumps counsel's decision.

Nothing about stipulation practice elevates it for special treatment. Instead, the decision whether to stipulate should be seen as merely one of several important judgments defense counsel may be called upon to make during trial. Surely, this decision is no more important than (1) the decision about how--and whether--to cross-examine a State's witness; (2) the decision about which, if any, defense witnesses to call; or (3) the decision about what questions to ask the defendant should he choose to testify. And, in my judgment, the decision whether to stipulate seems rather less important than the decision about what defense to assert at defendant's trial. Yet, all of the foregoing decisions belong exclusively to defense counsel, and his decision

- 22 -

prevails even over the defendant's objection. See <u>Ramey</u>, 152 Ill. 2d at 53, 604 N.E.2d at 281.

Another problematic aspect of the objection prong is that its language does not specify to whom or in what form the defendant must object. For example, is it sufficient for the defendant to "object" to his defense counsel? Or, does he have to raise an objection to the trial court and on the record?

Last, although <u>Campbell</u> appears to hold that if a defendant objects to his counsel's decision to stipulate, his objection trumps counsel's strategic decision, <u>Campbell</u> contains no requirement that either defense counsel or the trial court make the defendant aware that he possesses this power. Thus, the objection prong seems to protect only those few defendants who bring to their trial sufficient knowledge of criminal procedure to understand that they, not their counsel, have the final authority regarding stipulations.

2. <u>The</u> <u>Legitimate</u> <u>Trial</u>-<u>Tactics</u> <u>or</u> <u>Trial</u>-<u>Strategy</u>
<u>Prong</u> <u>of</u> <u>the</u> "<u>As</u> <u>Long</u> <u>As</u>" <u>Clause</u>

The second prong of <u>Campbell</u>'s "as long as" clause provides that trial counsel's decision to stipulate be a matter of trial tactics and strategy. <u>Campbell</u>, 208 Ill. 2d at 217, 802 N.E.2d at 1213. However, <u>Campbell</u> did not indicate whether--and how--trial courts are supposed to address this second prong. That is, should a trial court <u>sua</u> <u>sponte</u> challenge whether counsel's decision to stipulate is a matter of trial tactics and strategy if it is not immediately apparent to the trial court why this is so? Of course, the trial court would have to raise this issue <u>sua</u> <u>sponte</u> because the prosecutor, with whom defense counsel is offering to stipulate, will not be raising it. And if it does not appear to the trial court that counsel's decision to stipulate is a matter of trial tactics and strategy, then what sort of inquiry should--or must--the court make before rejecting the stipulation?

Questions of whether the conduct of defense counsel constitutes a matter of trial tactics or strategy are usually not appropriate subjects of judicial scrutiny--and with good reason. Trial courts know the charge against the defendant but generally have only a minimal understanding of the likely evidence both sides will present at trial. This is especially true at the beginning of the proceedings, when the trial court is in no position to judge whether the acceptance of an offered stipulation constitutes trial tactics or trial strategy.

Perhaps the most fundamental problem with the legitimate trial-tactics or trial-strategy prong is this: Trial courts never ask, should not ask, and cannot know what defense counsel's trial strategy is going to be. However, to determine whether a stipulation represents a matter of legitimate trial strategy, the court may be forced at some point to ask defense counsel for an explanation unless the circumstances at trial made the reasons for the stipulation obvious. And, if the court determines it must do so, should it ask defense counsel on the record? Further, if the court does so inquire and if the prosecutor cannot be present (as seems obvious), then does not the discussion constitute an otherwise improper ex parte conversation?

The only situation I am familiar with in which trial and reviewing courts are called upon to evaluate the reasonableness of a defense counsel's trial tactics or trial strategy is if the defendant raises the issue (either in the trial court after conviction, on direct appeal, or in a postconviction petition) of ineffective assistance of counsel. However, under these circumstances, the defendant has waived his right to the attorney-client privilege, and either party to the proceedings can call defendant's trial counsel to testify regarding what he did and why he did it at defendant's trial. See People v. O'Banner, 215 Ill. App. 3d 778, 793, 575 N.E.2d 1261, 1270 (1991). And, of course, the case is over, not still being litigated.

When a defendant raises an ineffective-assistance-of-counsel claim on direct appeal, many courts have often declined to resolve that issue, directing the defendant, instead, to file a postconviction petition, so that a record can be made regarding the subject of trial counsel's handling of the case. Courts so holding have explained that they wish to avoid speculating from a silent record. See People v. Kunze, 193 Ill. App. 3d 708, 726, 550 N.E.2d 284, 296 (1990) (claims of ineffective assistance of counsel are often better made in proceedings on a petition for postconviction relief, where a complete record can be made); see also People v. Durgan, 346 Ill. App. 3d 1121, 1141-42, 806 N.E.2d 1233, 1249-50 (2004) (reaffirming Kunze and declining to address on direct appeal trial counsel's failure to move to suppress certain evidence); People v. Cameron, 336 Ill. App. 3d 548, 552, 784 N.E.2d 438, 441 (2003) (reaffirming Kunze and declining to address on direct appeal whether trial counsel's failure to request a certain jury instruction constituted ineffective assistance); In re Carmody, 274 Ill. App. 3d 46, 56, 653 N.E.2d 977, 984 (1995) (noting that the record on direct appeal

of a criminal case rarely contains any explanation of the tactics of trial counsel and holding that, if those tactics are to be the subject of scrutiny, a record should be developed in which they can effectively be reviewed).

Yet, in a stipulation context, when nothing appears in the trial record to explain defense counsel's decision to stipulate, complying with the second prong of the "as long as" clause will require reviewing courts to speculate regarding what motivated trial counsel to stipulate. Those courts must somehow further decide whether, under the circumstances of the case, counsel's decision was a matter of trial strategy or trial tactics.

### D. Stipulations Epilogue

I have discussed Campbell and its progeny at some length as I respectfully suggest that the supreme court revisit the "as long as" clause. In the few years since Campbell was decided, many opinions have been issued addressing the matter of defense counsel's stipulation at trial in the absence of (1) an objection by the defendant and (2) any admonition by the trial court to the defendant concerning the stipulation. This large number of opinions on a particular point of law in such a short time comes as no surprise, given that stipulations occur with great frequency in criminal trials. Because of this frequency, the criminal trial bench and bar need a bright-line rule on counsel's authority to enter into stipulations. They need to know whether-- like the decisions about what defense to present or which witnesses to call--the power to decide whether to stipulate resides solely in defense counsel. Or whether, like the decision whether to waive a jury trial or to testify, the decision to stipulate lies solely with the defendant personally. The new approach of Campbell's "as long as" clause does not provide the criminal trial bench and bar the guidance they need.

I would prefer for the supreme court to decide that the decision to stipulate belongs to defense counsel without caveats. However, if the supreme court concludes otherwise, so be it. At least then the criminal bench and bar would know that whenever a stipulation is proposed at trial, the trial court needs to suspend the proceedings, admonish the defendant personally on the record about his right not to agree to the stipulation, and then (assuming the defendant agrees) make a finding that the defendant has intelligently and knowingly waived his right to object to the proposed stipulation.